******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TREVELLE DINHAM *v.* COMMISSIONER OF
CORRECTION
(AC 41625)

Keller, Elgo and Harper, Js.

*Syllabus*

The petitioner, who had been convicted, on a plea of guilty, of manslaughter
in the first degree with a firearm, sought a writ of habeas corpus. The
habeas court rendered judgment dismissing the habeas petition for lack
of subject matter jurisdiction and for the failure to state a claim on
which habeas relief could be granted, from which the petitioner, on the
granting of certification, appealed to this court. On appeal, he claimed,
inter alia, that the habeas court improperly dismissed his claims that
the respondent, the Commissioner of Correction, misconstrued and mis-
applied the statute (§ 54-125a) pertaining to parole suitability hearings
and the application of risk reduction credit toward the advancement of
a parole eligibility date, and the statute (§ 18-98e) pertaining to risk
reduction credit. Specifically, the petitioner claimed that the respondent
had misinterpreted and misapplied certain 2013 amendments to § 54-
125a, as set forth in No. 13-3 of the 2013 Public Acts (P.A. 13-3) and
No. 13-247 of the 2013 Public Acts (P.A. 13-247), which made a parole
suitability hearing discretionary rather than mandatory and eliminated
the use of risk reduction credits to advance the parole eligibility date
of inmates convicted of certain crimes, including manslaughter in the
first degree with a firearm, and certain 2015 amendments to § 18-98e,
as set forth in No. 15-216 of the 2015 Public Acts (P.A. 15-216), which
prohibited inmates who committed certain crimes, including manslaugh-
ter in the first degree with a firearm, from earning any risk reduction
credit in the future. *Held*:

1. The petitioner could not prevail on his claim that the habeas court improp-
erly dismissed his claim that, when he pleaded guilty in 2012 to man-
slaughter in the first degree with a firearm, he relied on governmental
representations that he would receive risk reduction credits to advance
his parole eligibility date and reduce the total length of his sentence:
although the petitioner claimed in his appellate brief that he had pleaded
guilty to manslaughter in the first degree with a firearm, which carried
a twenty-eight year term of imprisonment, rather than murder, which
carried a twenty-five year term of imprisonment, on the basis of represen-
tations by either the trial court or the prosecutor that, if he pleaded
guilty to the manslaughter charge, he would be eligible to earn risk
reduction credits that would advance his parole eligibility date and
would reduce the total length of his sentence to under twenty-five years,
the petitioner failed to plead in his amended habeas petition any factual
basis on which his claim relied, as the petitioner only broadly alleged
that he had a liberty interest in being able to rely on governmental
representations when deciding how to resolve his pending criminal case,
without any factual allegations of what the representations were or who
made them; accordingly, the habeas court did not err in dismissing the
petitioner's claim for failure to state a claim on which habeas relief
could be granted.

2. The habeas court properly dismissed the petitioner's claim that the respon-
dent misconstrued and misapplied P.A. 13-247, P.A. 13-3 and P.A. 15-
216, which was based on his claim that those public acts amending the
applicable statutes were substantive rather than procedural in nature
and, therefore, should not apply retroactively to him; the petitioner's
claim related to P.A. 13-247 was not ripe for adjudication because the
petitioner had not yet been denied a hearing and, thus, it was impossible
to determine whether a hearing would take place in the future, and with
respect to P.A. 13-3 and P.A. 15-216, the petitioner had to assert a
cognizable liberty interest sufficient to invoke the habeas court's subject
matter jurisdiction, which he failed to do, as he did not have a constitu-
tionally protected liberty interest in certain benefits, such as good time
credits, risk reduction credits, and early parole consideration, because
the statutory scheme pursuant to which the respondent was authorized

to award those benefits was discretionary in nature, and, therefore, the habeas court lacked subject matter jurisdiction over the petitioner's claims.

3. The petitioner could not prevail on his claim that the habeas court improperly dismissed certain counts in his petition for lack of subject matter jurisdiction and for the failure to state a claim on which habeas relief could be granted, which was based on his assertion that his claims established a cognizable liberty interest by alleging that the respondent, through his customary practices, had created a liberty interest: there is no liberty interest in earning risk reduction credit or having it applied to further an inmate's parole eligibility date due to the discretionary nature of the respective statutory schemes, there is no liberty interest in parole or the procedure by which parole is granted or denied, and it would be contrary to our case law to hold in the present case that the petitioner has a vested liberty interest in earning future risk reduction credits, in having those credits utilized to advance his parole eligibility date, and in having a mandatory parole suitability hearing, when those interests were not assured by statute, judicial decree, or regulation; moreover, the legislature has made it clear in its amendments to §§ 54-125a and 18-98e that the respondent is no longer authorized to utilize risk reduction credits to advance an inmate's parole eligibility date and that he may no longer issue risk reduction credits to inmates such as the petitioner, and this court will not interfere with the legislature's clear mandate.

Argued February 5—officially released July 2, 2019

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Hon. Edward J. Mullarkey*, judge trial referee, sua sponte, rendered judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Zenobia G. Graham-Days*, assistant attorney general, with whom, on the brief, was *George Jepsen*, former attorney general, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Trevelle Dinham, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner argues that the court improperly dismissed his claims for lack of subject matter jurisdiction and for the failure to state a claim upon which habeas relief can be granted. Specifically, the petitioner argues that the court improperly dismissed his claims that (1) he relied on "governmental representations" that he would receive risk reduction credit when he pleaded guilty to manslaughter in the first degree with a firearm, (2) the respondent, the Commissioner of Correction, misconstrued and misapplied several statutes pertaining to the petitioner receiving a parole suitability hearing, earning risk reduction credit in the future, and applying risk reduction credit toward the advancement of the petitioner's parole eligibility date, and (3) the respondent's customary practices have created a vested liberty interest in receiving a parole suitability hearing, earning future risk reduction credits, and applying risk reduction credits to advance his parole eligibility date. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history are relevant to the resolution of this appeal. On April 2, 2012, the petitioner pleaded guilty to one count of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a, which he committed on or about September 24, 1999,[1] and for which he was sentenced to twenty-eight years of imprisonment. Thereafter, the then self-represented petitioner commenced this action by filing a petition for a writ of habeas corpus. On November 15, 2017, the petitioner, after obtaining counsel, filed an eighteen count amended habeas petition. On March 19, 2018, the court, sua sponte, dismissed the amended petition for lack of subject matter jurisdiction and for the failure to state a claim upon which habeas relief may be granted.[2] See Practice Book § 23-29.[3] Instead of addressing the petitioner's claims individually, the court broadly determined that it lacked subject matter jurisdiction over the habeas petition and that the petition had failed to state a claim upon which habeas relief can be granted.[4] The court granted the petitioner's petition for certification to appeal.[5] The petitioner timely filed the present appeal, challenging the dismissal of ten of his claims. Additional facts will be set forth as necessary.

Before addressing the petitioner's individual claims, we first set forth the standards of review and relevant legal principles applicable to the petitioner's appeal. "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it

is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Pentland* v. *Commissioner of Correction*, 176 Conn. App. 779, 784–85, 169 A.3d 851, cert. denied, 327 Conn. 978, 174 A.3d 800 (2017). "[I]n order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 368, 163 A.3d 597 (2017). "With respect to the habeas court's jurisdiction, [t]he scope of relief available through a petition for habeas corpus is limited. In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty. . . . In other words, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . In order to . . . qualify as a constitutionally protected liberty [interest] . . . the interest must be one that is assured either by statute, judicial decree, or regulation." (Internal quotation marks omitted.) *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 342, 199 A.3d 1127 (2018).

"Likewise, [w]hether a habeas court properly dismissed a petition pursuant to Practice Book § 23-29 (2), on the ground that it fails to state a claim upon which habeas corpus relief can be granted, presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 368. "In reviewing whether a petition states a claim for habeas relief, we accept its allegations as true." *Coleman* v. *Commissioner of Correction*, 137 Conn. App. 51, 55, 46 A.3d 1050 (2012). For ease of discussion, we next provide a brief summary of the relevant laws pertaining to the petitioner's ability to receive a parole suitability hearing, to earn future risk reduction credit, and to apply his earned risk reduction credit toward the advancement of his parole eligibility date.

Pursuant to No. 04-234 of the 2004 Public Acts, codified at General Statutes § 54-125a (e), the Board of Pardons and Paroles (board) was *required* to hold a parole suitability hearing for any person eligible for parole who had completed 85 percent of his or her sentence. General Statutes (Rev. to 2013) § 54-125a (e) subsequently was amended by No. 13-247 of the 2013 Public Acts (P.A. 13-247), to make the board's parole suitability hearing discretionary, rather than mandatory.[6] If the board declines to hold a hearing, however, § 54-125a (e) requires the board to document specific reasons for declining to hold a hearing and to provide

those reasons to the person denied a hearing.

As to risk reduction credits, our Supreme Court has summarized the relevant statutes as follows: "In July, 2011 . . . General Statutes § 18-98e[7] became effective, pursuant to which the respondent had discretion to award risk reduction credit toward a reduction of an inmate's sentence, up to five days per month, for positive conduct. General Statutes § 18-98e (a) and (b). The respondent also was vested with discretion to revoke such credit, even credit yet to be earned, for good cause. See General Statutes § 18-98e (b). At the same time, the legislature amended the parole eligibility provision to provide: 'A person convicted of . . . an offense . . . where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed *less any risk reduction credit earned under the provisions of section 18-98e.*' . . . General Statutes (Rev. to 2011) § 54-125a (b) (2), as amended by Public Acts 2011, No. 11-51, § 25 (P.A. 11-51). The subsection of § 54-125a addressing parole hearings was similarly amended to account for earned risk reduction credit. General Statutes (Rev. to 2011) § 54-125a (e), as amended by P.A. 11-51, § 25. Accordingly, under the 2011 amendments, earned risk reduction credit was to be applied to an inmate's definite sentence to advance the inmate's end of sentence date, and the parole eligibility date calculated as a percentage of the sentence would advance in similar measure. . . .

"Under the 2011 amendments to § 54-125a and § 18-98e, any risk reduction credit earned by an inmate, and not subsequently revoked, would have both reduced his sentence and rendered him eligible for a hearing to determine whether he should be granted parole after he had served 85 percent of that reduced sentence.

"Effective July 1, 2013, the legislature again amended § 54-125a. Specifically, with regard to offenses like one of those of which the petitioner was convicted, the legislature eliminated the language that permitted the parole eligibility date to be advanced by the application of any earned risk reduction credit. See [Public Acts 2013, No. 13-3, § 59 (P.A. 13-3)]." (Emphasis in original; footnote altered.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 363–65.

General Statutes (Rev. to 2015) § 18-98e (a) subsequently was amended by No. 15-216 of the 2015 Public Acts (P.A. 15-216),[8] so that inmates convicted of certain violent crimes, including manslaughter in the first degree with a firearm, were ineligible to earn risk reduction credits in the future.[9] Mindful of the foregoing legal principles, we now turn to the specific claims raised by the petitioner in this appeal.

## I

The petitioner's first argument is that the court improperly dismissed his claims that, when he pleaded guilty in 2012 to manslaughter in the first degree with a firearm, he relied on "governmental representations"[10] that he would receive risk reduction credits to advance his parole eligibility date and reduce the total length of his sentence.[11] Specifically, the petitioner claims in his appellate brief that he pleaded guilty to manslaughter in the first degree with a firearm, which carried a twenty-eight year term of imprisonment, rather than murder, which carried a twenty-five year term of imprisonment, because either the court or the prosecutor represented that, if he pleaded guilty to the manslaughter charge, he would be eligible to earn risk reduction credits that would advance his parole eligibility date and would reduce the total length of his sentence to under twenty-five years. The petitioner, relying on *Santobello* v. *New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971),[12] argues that his operative petition states a cognizable liberty interest by virtue of his "right to rely on governmental representations," which confers subject matter jurisdiction on the court. Moreover, he asserts that the facts pleaded in his petition state a claim upon which habeas relief can be granted. We disagree.

The petitioner failed to plead in his amended petition any factual basis upon which his claim relies. The petitioner only broadly alleged, citing to *Santobello*, that he has a liberty interest in "being able to rely on governmental representations in the decision how to resolve his pending case," without any factual allegations of what the representations were or who made them. "It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic." (Internal quotation marks omitted.) *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 262, 990 A.2d 910 (2010), appeal dismissed, 303 Conn. 698, 36 A.3d 224 (2012). "[A] habeas petitioner is limited to the allegations in his petition, which are intended to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 789, 114 A.3d 925 (2015). Accordingly, we conclude that the court did not err in dismissing the petitioner's claims for failure to state a claim upon which habeas relief can be granted.[13]

## II

The petitioner next argues that the court improperly dismissed several counts of his operative habeas petition, which allege that three public acts amending §§ 54-

125a or 18-98e are substantive rather than procedural in nature and, therefore, should not apply retroactively to him.[14] Specifically, the petitioner claims that the respondent has misinterpreted and misapplied (1) P.A. 13-247, which amended General Statutes (Rev. to 2013) § 54-125a (e) to make a parole suitability hearing discretionary rather than mandatory, (2) P.A. 13-3, which amended General Statutes (Rev. to 2013) § 54-125a to eliminate the use of risk reduction credits to advance the parole eligibility date of inmates convicted of certain crimes, including manslaughter in the first degree with a firearm, and (3) P.A. 15-216, which amended General Statutes (Rev. to 2015) § 18-98e to prohibit inmates who committed certain crimes, including first degree manslaughter with a firearm, from earning any further risk reduction credit. We disagree.

As to the petitioner's claim regarding P.A. 13-247, even though it is unclear on what basis the court relied in concluding that it lacked subject matter jurisdiction and that the petition had failed to state a claim upon which habeas relief could be granted, our plenary review leads us to conclude that, as argued by the respondent in his principal brief, there is another basis for finding a lack of subject matter jurisdiction, namely, that the petitioner's claim is not ripe for adjudication. "The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Pentland* v. *Commissioner of Correction*, supra, 176 Conn. App. 785. "[A] trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent [on] some event that has not and indeed may never transpire. . . . [R]ipeness is a sine qua non of justiciability . . . ." (Internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 387–88. In *Perez*, our Supreme Court stated that, even if the petitioner in that case had stated a statutory claim upon which habeas relief could be granted, his challenge to P.A. 13-247 would not be ripe for adjudication because it was impossible to determine whether the board would decline to conduct a hearing on the petitioner's parole eligibility date.[15] Id. In the present case, the petitioner also has not yet been denied a hearing, and it is impossible to determine whether a hearing will take place in the future.[16] Accordingly, the petitioner's claim related to P.A. 13-247 is not ripe for review.

Turning to P.A. 13-3 and P.A. 15-216, in his appellate brief, the petitioner cites to *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 786 A.2d 1091 (2002), for the proposition that this court must hold that the public acts relevant to his claim are substantive in nature and, therefore, cannot be applied retroactively to him.[17] In *Johnson*, our Supreme Court determined that the petitioner had made a cognizable *ex post facto claim*, which

invoked the habeas court's subject matter jurisdiction. Id., 818–19. An ex post facto claim, however, is not dependent on the existence of a cognizable liberty interest. See *Breton* v. *Commissioner of Correction*, 330 Conn. 462, 471, 196 A.3d 789 (2018) ("[t]he presence or absence of an affirmative, enforceable right is not relevant . . . to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred" [internal quotation marks omitted]); see also *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 261, 914 A.2d 1034 (2007).

In the present case, the petitioner has stated that his claim is *not* an ex post facto claim but, rather, a statutory interpretation claim. Accordingly, *Johnson* is materially distinguishable from the present case. Citing to *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 387–88, the petitioner asserts that his claim is not controlled by the question of whether he has alleged a cognizable liberty interest in receiving risk reduction credit. In essence, the petitioner asks for this court to reach the merits of his claim without him first alleging a cognizable liberty interest sufficient to establish a basis for the court's subject matter jurisdiction. Such a reading of *Perez* would run contrary to our jurisprudence, which has consistently held that "[i]n order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty." (Internal quotation marks omitted.) *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 342. Accordingly, the petitioner must assert a cognizable liberty interest sufficient to invoke the habeas court's subject matter jurisdiction.

"Our appellate courts have concluded, consistently, that an inmate does not have a constitutionally protected liberty interest in certain benefits—such as good time credits, risk reduction credits, and early parole consideration—if the statutory scheme pursuant to which the [respondent] is authorized to award those benefits is discretionary in nature." *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 86–87, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018); see *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 370–73 (no liberty interest in risk reduction credits or application of risk reduction credits to advance parole eligibility date); see also *Rivera* v. *Commissioner of Correction*, 186 Conn. App. 506, 514, 200 A.3d 701 (2018), cert. denied, 331 Conn. 901, 201 A.3d 402 (2019), and cases cited therein. Because the petitioner has failed to assert a cognizable liberty interest in his claims, we conclude that the court lacked subject matter jurisdiction over them.

III

Finally, the petitioner claims that the court improp-

erly dismissed five counts in his petition for lack of subject matter jurisdiction and for the failure to state a claim upon which habeas relief can be granted because his claims established a cognizable liberty interest by alleging that the respondent, through his customary practices, has created a liberty interest.[18] We are not persuaded.

As previously mentioned, our Supreme Court has held that, "[i]n order to . . . qualify as a constitutionally protected liberty [interest] . . . the interest must be one that is assured either by statute, judicial decree, or regulation." (Internal quotation marks omitted.) *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 342. There is no liberty interest in earning risk reduction credit or having it applied to further an inmate's parole eligibility date due to the discretionary nature of the respective statutory schemes. See part II of this opinion. Furthermore, there is no liberty interest in parole or the procedure by which parole is granted or denied. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 373 ("[w]here . . . an inmate has no vested liberty interest in parole itself, then it follows that the procedure by which the board exercises its discretion to award or deny the petitioner parole does not implicate a vested liberty interest"). Thus, it would be contrary to our case law to hold in the present case that the petitioner has a vested liberty interest in earning future risk reduction credits, in having those credits utilized to advance his parole eligibility date, and in having a mandatory parole suitability hearing, all of which are not assured either by statute, judicial decree, or regulation.

The petitioner primarily relies on two federal cases to support the proposition that the respondent's customary practices created a cognizable liberty interest sufficient to confer subject matter jurisdiction over his petition. First, he cites to *Vitek* v. *Jones*, 445 U.S. 480, 487–88, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), in which the United States Supreme Court held that an inmate had a cognizable liberty interest in not being transferred to a mental health facility for treatment. Specifically, the court found that such a liberty interest was created from an expectation based on Nebraska statutes and the prison's practice that an inmate would not be transferred unless he suffered from a mental disease or defect that could not be treated at the prison. Id., 489–90. Importantly, the court also factored into its conclusion the stigma created by an involuntary confinement to a mental health institution, which it opined could negatively impact the inmate. Id., 492.

Second, the petitioner cites to *Arsberry* v. *Sielaff*, 586 F.2d 37, 47 (7th Cir. 1978), in which the plaintiffs claimed that, on the basis of prison policy and customs, they were entitled to earn good time credit during their segregation from the general prison population. The

court acknowledged that, absent a liberty interest protected by the United States constitution, it must look primarily to state law to determine if a liberty interest was created. Id., 45–46. In addition to state statutes and prison administrative regulations, the court determined that a liberty interest may also be found in official policies or practices if a prisoner could show "some restriction upon the prison officials' discretion to remove the benefit sought." Id., 46–48. In light of new evidence that four prison directives provided guidelines for denying good time credit in the event a prisoner was segregated from the general prison population, the court remanded the case to the trial court for an evidentiary hearing as to whether the directives created a state law entitlement. Id., 47.

A key distinction between the cases relied on by the petitioner and the present case is that, when looking to our state law, the *legislature* has barred the respondent from awarding further risk reduction credits to the petitioner or from applying the credits the petitioner has earned to advance his parole eligibility date. Indeed, the legislature has made it clear in its amendments to §§ 54-125a and 18-98e that the respondent is no longer authorized to utilize risk reduction credits to advance an inmate's parole eligibility date and that he may no longer issue risk reduction credits to inmates such as the petitioner. In other words, if we were to hold in this case that a liberty interest has been created in the earning of future risk reduction credit, the application of risk reduction credit to advance the petitioner's parole eligibility date, and in receiving a parole suitability hearing, we would usurp the power vested in the legislature, which broadly dictates to the respondent, a member of the executive branch, how to administer and apply risk reduction credit and conduct parole suitability hearings. "Because the ultimate power rests in the people and has been allocated to the separate branches of government, it is our duty to ensure that each branch, including the judiciary, does not usurp the power of its coequal branches. It is especially important that we take pains to restrain *this branch*, because a usurpation of legislative or executive power is, in effect, a usurpation of the people's power." (Emphasis in original.) *State* v. *Peeler*, 321 Conn. 375, 464, 140 A.3d 811 (2016) (*Zarella, J.*, dissenting). Therefore, we decline to interfere with the legislature's clear mandate. Accordingly, the court properly dismissed the petitioner's operative habeas petition for lack of subject matter jurisdiction and for the failure to state a claim upon which habeas corpus relief can be granted.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court's memorandum of decision states that the offense occurred on or before August 29, 2009. This appears to be an error that does not affect the propriety of the court's judgment.

[2] Prior to dismissing the amended petition, the court notified the parties

that they should be prepared to present arguments, at any time, addressing the court's subject matter jurisdiction.

[3] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion . . . dismiss the [habeas] petition, or any count thereof, if it determines that . . . (1) the court lacks jurisdiction . . . (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted . . . ."

[4] The court concluded in its memorandum of decision that "[b]ecause the petitioner has no right to earn and receive discretionary [risk reduction credit], and any changes, alterations and even the total elimination of [risk reduction credit] at most can only revert the petitioner to the precise measure of punishment in place at the time of the offense, the court concludes that it lacks subject matter jurisdiction over the habeas corpus petition and that the petition fails to state a claim for which habeas corpus relief can be granted."

[5] Specifically, the court certified the appeal on two grounds: "(1) Did the habeas court err in concluding that it lacked subject matter jurisdiction?; and (2) Did the habeas court err in concluding that the petition failed to state a claim upon which habeas corpus relief can be granted?"

[6] General Statutes (Rev. to 2013) § 54-125a (e), as amended by P.A. 13-247, § 376, provides in relevant part: "The Board of Pardons and Paroles *may* hold a hearing to determine the suitability for parole release of any person whose eligibility for parole release is subject to the provisions of subdivision (2) of subsection (b) of this section upon completion by such person of eighty-five per cent of such person's definite or aggregate sentence. . . . If a hearing is not held, the board shall document the specific reasons for not holding a hearing and provide such reasons to such person. . . ." (Emphasis added.)

[7] Section 18-98e was amended by No. 15-216 of the 2015 Public Acts, as subsequently addressed in this opinion. Section 18-98e was also amended in 2018. See footnote 9 of this opinion.

[8] General Statutes § 18-98e (a), as amended by P.A. 15-216, § 9, provides in relevant part: "Notwithstanding any provision of the general statutes, any person sentenced to a term of imprisonment for a crime committed on or after October 1, 1994, and committed to the custody of the Commissioner of Correction on or after said date, *except a person sentenced for a violation of section . . . 53a-55a . . .* may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction for conduct as provided in subsection (b) of this section occurring on or after April 1, 2006." (Emphasis added.)

[9] Additional amendments were made to § 18-98e pursuant to No. 18-155 of the 2018 Public Acts, but they are of no consequence to the matters raised in this appeal.

[10] We note that the petitioner, at points in his appellate brief, utilizes "representations" and "promise" interchangeably. We do not believe these words to be synonymous. Although either the prosecutor or the court may have in fact represented that the petitioner would be eligible to earn risk reduction credits, which would have been an accurate statement of the law at the time the petitioner pleaded guilty, such statements cannot reasonably be construed as a promise, which would imply that the prosecutor or the court had entered into a binding agreement with the petitioner.

[11] In his brief, the petitioner frames the issue as "whether [the habeas court] improperly dismissed counts twelve and sixteen of" his operative petition.

[12] In *Santobello* v. *New York*, supra, 404 U.S. 258, the defendant had reached a plea agreement with the prosecutor in which the prosecutor would permit him to plead guilty to a lesser offense and would not make a recommendation as to the length of the sentence. At the defendant's sentencing, a different prosecutor who did not negotiate the plea agreement recommended the maximum sentence, which the court imposed, in violation of the agreement. Id., 259–60. The United States Supreme Court held that, "the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to [e]nsure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id., 262.

[13] In the petitioner's appellate brief, he insinuates that we should look to the facts pleaded in his initial petition, which he believes sets forth the factual basis for his claim. We are mindful, however, that "[w]hen an

amended pleading is filed, it operates as a waiver of the original pleading. The original pleading drops out of the case and although it remains in the file, it cannot serve as the basis for any future judgment . . . ." (Internal quotation marks omitted.) *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 850, 168 A.3d 479 (2017). Thus, the petitioner's amended petition supersedes his initial petition and, accordingly, he cannot rely on the factual allegations made solely in his initial petition. See, e.g., *Wesley* v. *DeFonce Contracting Corp.*, 153 Conn. 400, 404, 216 A.2d 811 (1966) (amended complaint "entirely supersedes" original complaint).

[14] The petitioner framed the issue in his appellate brief as whether "the habeas court improperly dismissed counts two, six, and eighteen of the petitioner's amended petition for a writ of habeas corpus."

[15] Our Supreme Court first determined that the petitioner in that case had failed to state a claim upon which habeas relief could be granted. *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 387.

[16] The petitioner, citing *Abbott Laboratories* v. *Gardner*, 387 U.S. 136, 152–53, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), argues that, even if an injury has not yet been suffered, the case is ripe for review because the respondent's interpretation of P.A. 13-247 impacts his present actions while incarcerated. In *Abbott Laboratories*, the United States Supreme Court held that a challenge to a *federal regulation* before it was enforced was ripe for adjudication where a drug manufacturer either had to comply with the regulation or wait until it was a defendant in an enforcement action, where it would face serious civil and criminal penalties for failing to comply, before challenging the regulation. Id., 153. We do not find these considerations applicable in the present case.

[17] Even if we were to acquiesce to the petitioner's request to engage in a statutory analysis of the pertinent public acts to determine if they are substantive or procedural in nature and, thus, whether they should apply retroactively to the petitioner, he has not adequately briefed the issue. The petitioner simply distinguishes a substantive statute from a procedural statute and concludes that the relevant public acts are substantive statutes without providing any analysis of the language at issue in the statutes and without citing to any legislative history to evince the legislature's intent. See, e.g., *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 517–18, 767 A.2d 692 (2001) (discussing test to determine whether statute applies retroactively or prospectively). "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

[18] The petitioner claims in his appellate brief that "the habeas court improperly dismissed counts three, four, seven, nine, and seventeen of the petitioner's amended petition for a writ of habeas corpus."

---