******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IAN WRIGHT *v.* COMMISSIONER OF CORRECTION
## (AC 43170)

Moll, Suarez and DiPentima, Js.

*Syllabus*

The petitioner, a Jamaican national who previously had been convicted of various crimes, including murder, sought a writ of habeas corpus, claiming that his federal and state constitutional rights to due process were violated when he was denied a deportation parole eligibility hearing pursuant to statute (§ 54-125d (c)) after serving 50 percent of his sentence. The habeas court rendered judgment dismissing the habeas petition, concluding that it lacked subject matter jurisdiction because the petitioner had no liberty interest in a deportation parole eligibility hearing. The habeas court denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal, that court having properly determined that the petitioner lacked a liberty interest in a deportation parole eligibility hearing pursuant to § 54-125d; the due process clause does not provide the petitioner with a constitutionally protected liberty interest in a deportation parole hearing, as there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence; furthermore, § 54-125d did not create a liberty interest in parole eligibility or a parole eligibility hearing as the mandatory language "shall," used in § 54-125d (c), was inapplicable to the petitioner and is limited to those persons whose eligibility for parole is restricted pursuant to a different statute (§ 54-125a (b) (2)), which does not include the crime for which the petitioner was convicted, namely, murder; moreover, § 54-125d (b) vests the Department of Correction with discretion over deportation parole eligibility determinations and, thus, did not create an "expectancy of release," but only a possibility of parole; additionally, although a sentencing court may refer a convicted person who is an alien to the Board of Pardons and Paroles for deportation, it cannot do so for a person convicted of a capital felony or a class A felony, and, as murder is a class A felony, the sentencing court did not have the discretion to refer the petitioner to the Board of Pardons and Paroles.

Argued September 10—officially released November 17, 2020

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Ian Wright*, self-represented, the appellant (petitioner).

*Zenobia G. Graham-Days*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare E. Kindall*, solicitor general, for the appellee (respondent).

*Opinion*

DiPENTIMA, J. The self-represented petitioner, Ian Wright, appeals following the habeas court's denial of his petition for certification to appeal from that court's dismissal of his petition for a writ of habeas corpus due to lack of subject matter jurisdiction. On appeal, the petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal and (2) improperly concluded that it lacked subject matter jurisdiction over his petition when it reasoned that the petitioner did not have a liberty interest in a deportation parole eligibility hearing pursuant to General Statutes § 54-125d.[1] We dismiss the appeal.

The petitioner's claim on appeal centers on subsection (c) of § 54-125d, which concerns deportation parole. Section 54-125d provides in relevant part: "(a) The Board of Pardons and Paroles shall enter into an agreement with the United States Immigration and Naturalization Service for the deportation of parolees who are aliens as described in 8 USC 1252a (b) (2) and for whom an order of deportation has been issued pursuant to 8 USC 1252 (b) or 8 USC 1252a (b).

"(b) The Department of Correction shall determine those inmates who shall be referred to the Board of Pardons and Paroles based on intake interviews by the department and standards set forth by the United States Immigration and Naturalization Service for establishing immigrant status.

"(c) Notwithstanding the provisions of subdivision (2) of subsection (b) of section 54-125a, any person whose eligibility for parole is restricted under said subdivision shall be eligible for deportation parole under this section after having served fifty per cent of the definite sentence imposed by the court. . . ."[2]

The petitioner is a Jamaican national who was convicted in 2002, following a jury trial, of murder in violation of General Statutes § 53a-54a and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35. The petitioner was sentenced to a total effective term of thirty-five years of incarceration, including a sentence enhancement pursuant to General Statutes § 53-202k. His conviction was affirmed on direct appeal. *State* v. *Wright*, 77 Conn. App. 80, 822 A.2d 940, cert. denied, 266 Conn. 913, 833 A.2d 466 (2003). In 2013, the United States Immigration Court ruled that the petitioner be removed from the United States to Jamaica.

The self-represented petitioner filed an amended petition for a writ of habeas corpus in May, 2018. He alleged that he has made several attempts to contact the Board of Pardons and Paroles (board) for the purpose of obtaining a deportation parole eligibility hearing. He claimed that his due process rights were violated because he was denied a deportation parole eligibility

hearing pursuant to § 54-125d (c) after having served 50 percent of his sentence. In a separate action filed in March, 2018, the plaintiff initiated a civil rights action pursuant to 42 U.S.C. § 1983, in which he similarly argued that his federal and state constitutional rights to due process were violated when he was not given a deportation parole eligibility hearing. See *Wright* v. *Giles*, 201 Conn. App.     ,     A.3d     (2020).

On September 19, 2018, pursuant to Practice Book § 23-29, the habeas court provided notice of a hearing to determine whether, inter alia, the court lacked subject matter jurisdiction over the petition.[3] The respondent, the Commissioner of Correction, thereafter filed a motion to dismiss and, in a memorandum of law in support thereof, argued that the court lacked subject matter jurisdiction over the petition because the petitioner failed to raise a liberty interest. Following oral argument on November 9, 2018, the court issued an order allowing the petitioner additional time to submit written responses to the issues raised by the court's notice and the respondent's motion to dismiss. The petitioner filed a "Memorandum of Law In Support of Objection to Respondent's Motion to Dismiss," which included exhibits in support of his arguments, and later filed a "Supplemental Memorandum of Law In Support of Objection to Respondent's Motion to Dismiss." A second hearing was held on February 22, 2019.

In a memorandum of decision filed May 10, 2019, the court dismissed the petition for lack of subject matter jurisdiction. The court rejected the petitioner's interpretation of § 54-125d (c) that parole eligibility was mandatory once 50 percent of a sentence is served and concluded that, in light of § 54-125d (b), the statute did not convey a liberty interest. The court reasoned that deportation parole eligibility does not "simply rest on the amount of a sentence that has been served, as argued by the petitioner, but requires an interview process, and vests discretion with [the United States Immigration and Naturalization Service] to determine the standards a particular inmate must meet in that process." The court further reasoned, citing *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 914 A.2d 1034 (2007), that permissive language in parole statutes does not give rise to a liberty interest and, because "the operative language of this statute clearly contemplates an eligibility determination process, the petitioner has no inherent recognized liberty interest, nor any state created liberty interest, in a deportation parole eligibility hearing." (Internal quotation marks omitted.) The petitioner filed a petition for certification to appeal, which the court denied. This appeal followed.

I

The petitioner first claims that the court erred in denying his petition for certification to appeal from the court's dismissal of his petition for lack of subject

matter jurisdiction.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Perry* v. *Commissioner of Correction*, 131 Conn. App. 792, 795–96, 28 A.3d 1015, cert. denied, 303 Conn. 913, 32 A.3d 966 (2011).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 169 Conn. App. 444, 448, 150 A.3d 1166 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017). We conclude, on the basis of our review of the petitioner's substantive claim, that he cannot prevail under the two-pronged test in *Simms* because he has not demonstrated that the court abused its discretion in denying certification to appeal.

II

The petitioner claims that the court improperly dismissed his petition for lack of subject matter jurisdiction. He contends that the court has subject matter jurisdiction over his petition because he has a cognizable liberty interest in a deportation parole hearing and/ or eligibility on the basis of the mandatory language

"shall" used in § 54-125d (c) concerning deportation parole eligibility. He argues that, because he has served 50 percent of his sentence, he "shall be eligible for deportation parole" according to § 54-125d (c). We disagree.

"The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Woods* v. *Commissioner of Correction*, 197 Conn. App. 597, 606–607, 232 A.3d 63 (2020).

"In order to state a claim for a denial of procedural due process . . . a prisoner must allege that he possessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest. . . . A petitioner has no right to due process . . . unless a liberty interest has been deprived . . . . Our first inquiry, therefore, is whether the petitioner has alleged a protected liberty interest. That question implicates the subject matter jurisdiction of the habeas court." (Citation omitted; internal quotation marks omitted.) *Anthony A.* v. *Commissioner of Correction*, 326 Conn. 668, 674–75, 166 A.3d 614 (2017).

"[T]he scope of relief available through a petition for habeas corpus is limited. In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty. . . . In other words, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . In order to . . . qualify as a constitutionally protected liberty [interest] . . . the interest must be one that is assured either by statute, judicial decree, or regulation.§ (Citations omitted; internal quotation marks omitted.) *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 85, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018).

"Liberty interests protected by the [f]ourteenth [a]mendment may arise from two sources—the [d]ue [p]rocess [c]lause itself and the laws of the [s]tates." (Internal quotation marks omitted.) *State* v. *Matos*, 240 Conn. 743, 749, 694 A.2d 775 (1997). "A liberty interest may arise from the [c]onstitution itself, by reason of guarantees implicit in the word 'liberty,' see, e.g., *Vitek* v. *Jones*, 445 U.S. 480, [493–94], 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (liberty interest in avoiding involuntary

psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., *Wolff* v. *McDonnell*, 418 U.S. 539, [556–58], 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." *Wilkinson* v. *Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). It is clear that the first of those two sources does not provide the petitioner in this case with a liberty interest in a deportation parole hearing. The United States Supreme Court has held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . A state may . . . establish a parole system, but it has no duty to do so." (Citations omitted.) *Greenholtz* v. *Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979); see also *Swarthout* v. *Cooke*, 562 U.S. 216, 220, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011).

The second source, state law, does not provide the petitioner in this case with a cognizable liberty interest. In *Greenholtz* v. *Inmates of Nebraska Penal & Correctional Complex*, supra, 442 U.S. 7, which specifically concerned whether inmates had been unconstitutionally denied parole pursuant to a state parole statute, the United States Supreme Court determined that the existence of a state-created liberty interest was to be determined on a "case-by-case" basis and, that under the circumstances present in *Greenholtz*, the court accepted the inmates' argument that the use of the mandatory language "shall" in a state parole statute created a legitimate "expectancy of release" that was entitled to constitutional protection. Id., 12. In *Board of Pardons* v. *Allen*, 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987), which also specifically concerned a state's parole regulations, the United States Supreme Court determined that the state statute created a due process liberty interest in parole because the statute "uses mandatory language ('shall') to creat[e] a presumption that parole release will be granted when the designated findings are made."[4] (Footnote omitted; internal quotation marks omitted.) Id., 377–78. In the recent decision of *Dinham* v. *Commissioner of Correction*, 191 Conn. App. 84, 97–98, 213 A.3d 507, cert. denied, 333 Conn. 927, 217 A.3d 995 (2019), this court stated: "Our appellate courts have concluded, consistently, that an inmate does not have a constitutionally protected liberty interest in certain benefits—such as good time credits, risk reduction credits, and early parole consideration—if the statutory scheme pursuant to which the [respondent] is authorized to award those benefits is discretionary in nature." (Internal quotation marks omitted.)

In *Boyd* v. *Commissioner of Correction*, 199 Conn. App. 575, 581–90,     A.3d    , cert. granted, 335 Conn.

962, A.3d (2020), this court examined a state parole statute for mandatory or discretionary language to determine whether the legislature vested the petitioner with a liberty interest in parole eligibility sufficient to invoke the subject matter jurisdiction of the habeas court. This court held that the language of the statute for determining parole eligibility of juvenile offenders, General Statutes ” 54-125a (f), vested the petitioner with a cognizable liberty interest in parole eligibility status because, according to the language of the statute, the board was "required to hold a hearing [w]henever a person becomes eligible for parole release, and the petitioner . . . will become eligible for parole release after serving 60 percent of his fifty year sentence . . . ." (Internal quotation marks omitted.) Id., 587. But see *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 371, 163 A.3d 597 (2017) (parole eligibility pursuant to § 54-125a does not constitute cognizable liberty interest sufficient to invoke habeas jurisdiction because decision to grant parole entirely is within discretion of board); *Rivera* v. *Commissioner of Correction*, 186 Conn. App. 506, 515, 200 A.3d 701 (2018) (petitioner did not have constitutionally protected liberty interest because applicable risk reduction credit statute provided that credit be awarded at respondent's discretion), cert. denied, 331 Conn. 901, 201 A.3d 402 (2019); *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 344, 199 A.3d 1127 (2018) (risk reduction credits provided to inmates at discretion of respondent pursuant to General Statutes § 18-98e (a)), cert. granted on other grounds, 335 Conn. 901, 225 A.3d 685 (2020); *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 86–87, 194 A.3d 857 (no liberty interest in risk reduction credits where award credits discretionary pursuant to § 18-98e), cert. denied, 330 Conn. 933, 195 A.3d 383 (2018); *Byrd* v. *Commissioner of Correction*, 177 Conn. App. 71, 82, 171 A.3d 1103 (2017) (to constitute constitutionally protected liberty interest, interest must be *assured* by state statute, judicial decree or regulation).

In the present case, the deportation parole statute, § 54-125d, does not create a liberty interest in parole eligibility or a parole eligibility hearing.[5] First, the petitioner's argument that the parole deportation statute creates a liberty interest rests on the use of the mandatory language "shall" in § 54-125d (c). That subsection, however, does not apply to the petitioner. Section 54-125d (c) provides that, "[n]otwithstanding the provisions of subdivision (2) of subsection (b) of section 54-125a, *any person whose eligibility for parole is restricted under said subdivision* shall be eligible for deportation parole under this section after having served fifty per cent of the definite sentence imposed by the court." (Emphasis added.) By its plain terms, the applicability of § 54-125d (c) is limited to persons whose eligibility for parole is restricted pursuant to

§ 54-125a (b) (2). Section 54-125a (b) (2) provides that "[a] person convicted of (A) a violation of section 53a-100aa or 53a-102, or (B) an offense, other than an offense specified in subdivision (1) of this subsection, where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed." Thus, § 54-125a (b) (2) does not include the crime for which the petitioner had been convicted, murder in violation of § 53a-54a, which crime is specified in § 54-125a (b) (1) (E). Accordingly, because the word "shall" as used in § 54-125d (c) does not apply to the petitioner, that language cannot form the basis for the petitioner's claimed liberty interest.

Second, subsection (b) of § 54-125d vests the Department of Correction (department) with discretion over deportation parole eligibility determinations. Subsection (b) provides that "[t]he Department of Correction shall determine those inmates who shall be referred to the Board of Pardons and Paroles based on intake interviews by the department and standards set forth by the United States Immigration and Naturalization Service for establishing immigrant status." General Statutes § 54-125d (b). As a result, whether a particular inmate is referred to the board depends on the result of intake interviews conducted by the department. Accordingly, because of the discretion that the plain language of § 54-125d (b) confers on the department in the interview process, the deportation parole statute does not create an "expectancy of release"; *Greenholtz* v. *Inmates of Nebraska Penal & Correctional Complex*, supra, 442 U.S. 12. The deportation parole statute only creates the possibility of parole, provided multiple factors are satisfied, including a discretionary determination by the department following an interview process. "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained . . . a hope which is not protected by due process." (Citation omitted; emphasis omitted.) Id., 11.

Additionally, according to § 54-125d (d), "a sentencing court may refer any person convicted of an offense other than a capital felony or a class A felony who is an alien to the Board of Pardons and Paroles for deportation under this section." According to the plain language of this subsection, the referral process is discretionary. Moreover, because murder is a class A felony; see General Statutes § 53a-35a (2); *State* v. *Adams*, 308 Conn. 263, 272–73, 63 A.3d 934 (2013); the sentencing court is not given discretion to refer the petitioner to the board.

For the foregoing reasons, the petitioner has not alleged a constitutionally protected liberty interest that

invokes the jurisdiction of the habeas court. The petitioner has failed to sustain his burden that the denial of his petition for certification to appeal was a clear abuse of discretion or that an injustice has been done. See *Simms* v. *Warden*, supra, 230 Conn. 612; see also *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). Therefore, we conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner also claims that, in failing to grant him a deportation parole eligibility hearing, the respondent, the Commissioner of Correction, failed to adhere to the Uniform Administrative Procedures Act for rule making. See General Statutes § 4-183 et seq. Because we determine that the habeas court properly concluded that the petitioner did not have a liberty interest in deportation parole eligibility, we decline to address this claim. For the petitioner's claim to be cognizable in a habeas action, the petitioner would have to have at least some type of constitutional or statutorily created liberty interest in deportation parole eligibility. See *Vincenzo* v. *Warden*, 26 Conn. App. 132, 138, 599 A.2d 31 (1991). Because the petitioner does not have such a liberty interest, the habeas court lacked subject matter jurisdiction over this claim. See id., 143–44. "Unless a liberty interest in parole exists, the procedures followed in the parole determination are not required to comport with standards of fundamental fairness." Id., 144. "[A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 85, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018).

[2] General Statutes § 54-125a (b) provides: "(1) No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under subsection (a) of this section: (A) Capital felony, as provided under the provisions of section 53a-54b in effect prior to April 25, 2012, (B) murder with special circumstances, as provided under the provisions of section 53a-54b in effect on or after April 25, 2012, (C) felony murder, as provided in section 53a-54c, (D) arson murder, as provided in section 53a-54d, (E) murder, as provided in section 53a-54a, or (F) aggravated sexual assault in the first degree, as provided in section 53a-70a. (2) A person convicted of (A) a violation of section 53a-100aa or 53a-102, or (B) an offense, other than an offense specified in subdivision (1) of this subsection, where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed."

[3] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction . . . ."

[4] In *Sandin* v. *Conner*, 515 U.S. 472, 479–84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), which concerned internal prison regulations concerning disciplinary segregation, the United States Supreme Court criticized the methodology that had been used in a long line of cases, including *Greenholtz*, of searching for mandatory language in order to determine whether a state-created liberty interest existed. The court instead favored an analysis for determining state-created liberty interests that focused on the nature of the deprivation, namely whether an "atypical and significant hardship" has been placed "on the inmate in relation to the ordinary incidents of prison life." *Sandin* v. *Conner*, supra, 515 U.S. 484. In *Anthony A.* v. *Commissioner of Correction*, supra, 326 Conn. 675–79, our Supreme Court noted *Sandin*'s criticism of such mandatory versus discretionary methodology in the context of an inmate's claim that he was incorrectly classified as a sex offender, to which claim our Supreme Court applied the stigma plus test. Id., 675–81 (in applying stigma plus test, court asked "whether the allegations of the petition demonstrate that the classification was wrongful and stigmatized the petitioner, and that the consequences suffered by the petitioner were 'qualitatively different' from the punishments usually suffered by prisoners, so that they

constituted a major change in the conditions of confinement amounting to a grievous loss").

The approach of applying the methodology in *Greenholtz* to claims regarding alleged liberty interests in parole eligibility and interpreting *Sandin* as not applying to such claims has been adopted by other courts. The United States Court of Appeals for the District of Columbia Circuit aptly describes the reasoning involved in such an interpretation in *Ellis* v. *District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996): "The *Sandin* test relates to claims dealing with the day-to-day management of prisons. It seems ill-fitted to parole eligibility determinations. Parole is, in the words of *Sandin*, surely a freedom from restraint but the restraint itself will always be an ordinary incident of prison life. . . . In other words, if a prisoner is denied parole—if, in terms of *Sandin*, the prisoner is restrained—the prisoner will never suffer an atypical or significant hardship as compared to other prisoners. He will continue to serve his sentence under the same conditions as his fellow inmates. There is no room for an argument that the denial of parole always imposes extraordinary hardship by extending the length of incarceration, and therefore gives rise to a liberty interest protected by the [d]ue [p]rocess [c]lause. That is simply a recasting of the argument—rejected in *Greenholtz* . . . and unaffected by *Sandin*—that a liberty interest in parole stems directly from the [c]onstitution without regard to state law. And yet given *Greenholtz* and *Allen*, an inferior court could not accept an argument that, no matter what state law provides, a prisoner's interest in parole can never amount to a liberty interest protected by the [d]ue [p]rocess [c]lause. Where does this leave us? *Sandin* did not overrule *Greenholtz* or *Allen* or any other Supreme Court decision. . . . To be sure, it abandoned the reasoning embodied in those opinions, at least insofar as applied to prisoners challenging the conditions of their confinement or the administration of the prison. In this situation, we think the only course open to us is to comply with the rule expressed in *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U.S. 477, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989): 'If a precedent of this [c]ourt has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this [c]ourt the prerogative of overruling its own decisions.' [Id., 484] . . . . Until the [c]ourt instructs us otherwise, we must follow *Greenholtz* and *Allen* because, unlike *Sandin*, they are directly on point. Both cases deal with a prisoner's liberty interest in parole; *Sandin* does not." (Citation omitted; internal quotation marks omitted.) *Ellis* v. *District of Columbia*, supra, 1418.

In the present case, we apply the mandatory versus discretionary analysis used in *Greenholtz* and *Allen*. It remains good law that an inmate does not have a constitutionally protected liberty interest in early parole consideration. See, e.g., *Rivera* v. *Commissioner of Correction*, 186 Conn. App. 506, 514, 200 A.3d 701 (2018), cert. denied, 331 Conn. 901, 201 A.3d 402 (2019).

[5] The respondent argues that the petitioner does not have a liberty interest in deportation parole eligibility pursuant to § 54-125d for the additional reason that the petitioner was convicted of murder in violation of § 53a-54a, and § 54-125a (b) (1) (E) provides that "[n]o person convicted of any of the following offenses, which was committed on or after July 1, 1981, *shall be eligible for parole under subsection (a) of this section* . . . murder, as provided in section 53a-54a . . . ." (Emphasis added.) By its terms, however, § 54-125a (b) (1) (E) applies only to the ineligibility for parole under § 54-125a (a).