******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# JERRY LEWIS WHISTNANT *v.* COMMISSIONER OF CORRECTION
## (AC 42894)

DiPentima, C. J., and Moll and Flynn, Js.*

*Syllabus*

The petitioner, who had been convicted on a guilty plea in 2009, of the crime of robbery in the first degree in connection with a robbery he committed in 2008, sought a writ of habeas corpus, claiming, inter alia, a violation of the ex post facto clause of the United States constitution. In 2011, the legislature enacted a statute (§ 18-98e) that permitted certain inmates, including the petitioner, to earn risk reduction credit toward the reduction of their sentences, at the discretion of the respondent, the Commissioner of Correction, and amended the statute (§ 54-125a (b) (2)) governing parole eligibility to permit risk reduction credit to be applied to advance the parole eligibility date of inmates convicted of certain violent offenses. In 2013, the legislature enacted an amendment (P.A. 13-3, § 59) to § 54-125a (b) (2) that removed the language that permitted the risk reduction credit earned under § 18-98e to advance the parole eligibility date of violent offenders. The petitioner claimed, inter alia, that the 2013 amendment, as applied retroactively to him, violated the ex post facto clause of the federal constitution. The habeas court rendered judgment declining to issue a writ of habeas corpus pursuant to the applicable rule of practice (§ 23-24 (a) (1)) on the ground that it lacked subject matter jurisdiction. Thereafter, the habeas court denied the petitioner's petition for certification to appeal, and the petitioner appealed to this court. *Held*:

1. The habeas court did not abuse its discretion in denying the petition for certification to appeal, as the petitioner failed to demonstrate that his claims were debatable among jurists of reason, that a court could have resolved the issues in a different manner or that the questions were adequate to deserve encouragement to proceed further.

2. The petitioner's claim that the habeas court improperly failed to conduct a hearing before declining to issue a writ of habeas corpus under Practice Book § 23-24 (a) (1) was outside the scope of this court's appellate review; pursuant to the applicable statute (§ 52-470 (g)), this court's review was confined to the issues presented in the petitioner's petition for certification to appeal, which incorporated two grounds for appeal, and, because neither ground indicated that the petitioner sought to challenge the habeas court's judgment on the basis that the court did not conduct a hearing, review pursuant to *State* v. *Golding* (213 Conn. 233) was unavailable because permitting a petitioner, in an appeal from a habeas judgment following the denial of a petition for certification to appeal, to seek *Golding* review of a claim that was not raised in, or incorporated into, the petition for certification to appeal would circumvent the requirements of § 52-470 (g) and undermine the goals that the legislature sought to achieve in enacting it.

3. The petitioner could not prevail on his claim that the habeas court improperly concluded that it lacked subject matter over the claims in his habeas petition:

a. The habeas court lacked subject matter jurisdiction over the petitioner's claim that the retroactive application of the 2013 amendment to § 54-125a (b) (2) to him violated the ex post facto clause of the federal constitution, the petitioner having failed to raise a cognizable ex post facto claim in the habeas petition; the petitioner made no claim that legislation regarding eligibility for parole consideration became more onerous after the date of his criminal behavior but, rather, claimed that new legislation enacted in 2011, after his criminal conduct, conferred a benefit on him that was taken away in 2013, which did not implicate the ex post facto prohibition because the changes that occurred between 2011 and 2013 had no bearing on the punishment to which the petitioner's criminal conduct exposed him when he committed the robbery in 2008, and, with regard to parole eligibility, the 2013 amendment merely returned the petitioner to the same position that he was in at the time

of his offense.

b. The habeas court lacked subject matter jurisdiction over the petitioner's claim that the retroactive application of the 2013 amendment to § 54-125a (b) (2) to him violated his right to due process, as the petitioner lacked a vested liberty interest in the risk reduction credit that he had earned that, following the enactment of the 2013 amendment, was no longer being applied to advance his parole eligibility date.

Argued March 12—officially released August 4, 2020

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Bhatt, J.*, rendered judgment declining to issue a writ of habeas corpus; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Deborah G. Stevenson*, assigned counsel, for the appellant (petitioner).

*Zenobia G. Graham-Days*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellee (respondent).

*Opinion*

MOLL, J. The petitioner, Jerry Lewis Whistnant, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court declining to issue a writ of habeas corpus for lack of subject matter jurisdiction pursuant to Practice Book § 23-24 (a) (1).[1] On appeal, the petitioner claims that the court improperly (1) denied his petition for certification to appeal, (2) declined to issue the writ of habeas corpus pursuant to § 23-24 (a) (1) without conducting a hearing, and (3) concluded that it lacked subject matter jurisdiction over the claims raised in his petition for a writ of habeas corpus. We conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal, and, therefore, we dismiss the appeal.

The following facts, procedural history, and statutory history are relevant to our disposition of the appeal. On September 27, 2008, the petitioner was arrested and charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[2] On May 8, 2009, after the petitioner pleaded guilty to the charge, the trial court, *Alexander, J.*, sentenced him to fifteen years of incarceration, followed by three years of special parole. The petitioner did not appeal from the judgment of conviction. As a result of his conviction, the petitioner remains in the custody of the respondent, the Commissioner of Correction.

At the time that the petitioner committed the robbery on September 27, 2008, General Statutes (Rev. to 2007) § 54-125a (b) (2), as amended during a special session in January, 2008; see Public Acts, Spec. Sess., January, 2008, No. 08-1, § 5; provided in relevant part: "A person convicted of . . . (B) an offense, other than [certain parole ineligible offenses], where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed. . . ."[3] The crime of robbery in the first degree fell within this class of violent offenses. See *Holliday* v. *Commissioner of Correction*, 184 Conn. App. 228, 231 n.2, 194 A.3d 867 (2018) ("robbery in the first degree . . . involves the [use] or threaten[ed] . . . immediate use of physical force upon another person" (internal quotation marks omitted)), cert. granted on other grounds, 335 Conn. 901, 225 A.3d 960 (2020). Therefore, at the time that he had committed the robbery, the petitioner was ineligible for parole until he had served no less than 85 percent of his sentence.

In 2011, about three years after his commission of the robbery and long after his May 8, 2009 date of conviction, while the petitioner was incarcerated, the

legislature enacted No. 11-51, § 22, of the 2011 Public Acts (P.A. 11-51), later codified in General Statutes § 18-98e. Pursuant to § 18-98e (a), certain inmates, including the petitioner, convicted of crimes committed on or after October 1, 1994, "may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the [respondent]," for certain positive, statutorily described behavior. The respondent has the discretion to "cause the loss of" such credit, including credit yet to be earned, for good cause. General Statutes § 18-98e (b). Additionally, in 2011, the legislature amended § 54-125a (b) (2) to provide in relevant part: "A person convicted of . . . (B) an offense, other than [certain parole ineligible offenses], where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed *less any risk reduction credit earned under the provisions of section 18-98e.*" (Emphasis added.) General Statutes (Rev. to 2011) § 54-125a (b) (2), as amended by Public Acts 2011, No. 11-51, § 25. Thus, following the enactment of § 18-98e and the 2011 amendment to § 54-125a (b) (2), the petitioner was eligible to earn risk reduction credit to advance both the end date of his sentence and his parole eligibility date. See *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 364, 163 A.3d 597 (2017).

In 2013, the legislature enacted No. 13-3, § 59, of the 2013 Public Acts (P.A. 13-3), which amended, inter alia, § 54-125a (b) (2) by removing the language permitting risk reduction credit earned under § 18-98e to advance the parole eligibility date of violent offenders, such as the petitioner. Accordingly, following the enactment of P.A. 13-3, although risk reduction credit earned by the petitioner, and not subsequently revoked, could still be used to advance the end date of his sentence, the credit could not be applied to advance his parole eligibility date. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 365.

On February 19, 2019, the petitioner, acting as a self-represented party, filed a petition for a writ of habeas corpus using a state supplied form (petition). Therein, he alleged that the Department of Correction (department) was "not applying [his] [risk reduction credit] to [his] [p]arole [e]ligibility date." The petitioner requested that the habeas court provide the following relief: "Apply [his] [risk reduction credit] to [his] parole eligibility date."

The petitioner appended several exhibits to the petition, including a document titled "Habeas Corpus," in which he alleged additional facts in support of the petition.[4] Therein, the petitioner alleged that, prior to the

enactment of P.A. 13-3, he had earned risk reduction credit that the respondent had applied to advance his parole eligibility date to November 24, 2020, but, following the enactment of P.A. 13-3, the respondent stopped applying the credit that he had earned to advance his parole eligibility date. On the basis of those allegations, the petitioner asserted that P.A. 13-3, as applied to him retroactively, violated the ex post facto clause of the United States constitution.[5] In addition, the petitioner raised an equal protection claim under the fifth and fourteenth amendments to the United States constitution, in support of which he alleged "all persons similarly situated should be treated alike, and . . . there is no legitimate penological interest to justify the [department] and/or [the] [s]tate of Connecticut in cancelling provisional early release credits awarded to [him] that applies to his parole eligibility date." Under the heading of his equal protection claim, the petitioner also alleged that he "already received his [risk reduction credit] that applied to his parole eligibility date in 2011 until 2013. He already received the benefit from the [risk reduction credit] which created a liberty interest."

On March 4, 2019, the habeas court, *Bhatt, J.*, issued an order declining to issue the writ of habeas corpus[6] pursuant to Practice Book § 23-24 (a) (1). Specifically, the court stated: "Upon a review of the facts and allegations contained in the [petition], the court declines to issue the writ pursuant to [§ 23-24 (a) (1)]. This court is without jurisdiction to consider the claims raised in the petition, to wit: that the retroactive application of P.A. 13-3 violates the prohibition against ex post facto laws and the equal protection clause. The petitioner committed the instant offense in 2008, before the enactment of P.A. 11-51, which created the [risk reduction credit] program . . . .

"Our Supreme Court and Appellate Court have repeatedly held that this court lacks jurisdiction over claims involving an offense date that is prior to the enactment of the [risk reduction credit] statute. Specifically on point is *Perez* v. *Commissioner of Correction*, [supra, 326 Conn. 357], in which our Supreme Court rejected ex post facto, due process and equal protection challenges to the retroactive application of P.A. 13-3 in the case of a petitioner whose offense date was in 2010, prior to the enactment of [the risk reduction credit statute]. See also *Boria* v. *Commissioner of Correction*, 186 Conn. App. 332, 199 A.3d 1127 (2018), [cert. granted on other grounds, 335 Conn. 901, 225 A.3d 685 (2020)]; *Holliday* v. *Commissioner of Correction*, [supra, 184 Conn. App. 228].

"The holdings of those cases make clear that this court has no jurisdiction to consider the claims raised in the petition. If, however, the petitioner is claiming that credits that have already been earned and applied in the past have been unconstitutionally forfeited by

the [department] . . . as opposed to [the department's] failure to allow the petitioner to continue to earn and apply new credits to his sentence, then the petitioner is invited to refile the petition."

Thereafter, the petitioner filed a petition for certification to appeal from the court's judgment, which the court denied.[7] This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the petitioner's claim that the habeas court abused its discretion in denying his petition for certification to appeal from the court's judgment declining to issue the writ of habeas corpus under Practice Book § 23-24 (a) (1). We disagree.

General Statutes § 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

"As our Supreme Court has explained, one of the goals our legislature intended by enacting this statute was to limit the number of appeals filed in criminal cases and hasten the final conclusion of the criminal justice process . . . . [T]he legislature intended to discourage frivolous habeas appeals. . . . [Section] 52-470 (b)[8] acts as a limitation on the scope of review, and not the jurisdiction, of the appellate tribunal. . . .

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [disposition] of his [or her] petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he [or she] must demonstrate that the denial of his [or her] petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he [or she] must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; footnote in original; internal quotation marks omitted.) *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 572–73, 211 A.3d 72, cert. denied, 333 Conn. 902, 215 A.3d 160 (2019).

For the reasons set forth in parts II and III of this opinion, we conclude that the petitioner has failed to demonstrate that (1) his claims are debatable among jurists of reason, (2) a court could resolve the issues in a different manner, or (3) the questions are adequate to deserve encouragement to proceed further. Thus, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

II

Turning to the petitioner's first substantive claim on appeal, the petitioner asserts that the habeas court improperly failed to conduct a hearing before declining to issue the writ of habeas corpus under Practice Book § 23-24 (a) (1). For the reasons that follow, we conclude that this claim is outside of the scope of our appellate review.

"As our standard of review set forth [in part I of this opinion] makes clear, an appeal following the denial of a petition for certification to appeal from the judgment [disposing of] a petition for a writ of habeas corpus is not the appellate equivalent of a direct appeal from a criminal conviction. Our limited task as a reviewing court is to determine whether the habeas court abused its discretion in concluding that the petitioner's appeal is frivolous. Thus, we review whether the issues for which certification to appeal was sought are debatable among jurists of reason, a court could resolve the issues differently or the issues are adequate to deserve encouragement to proceed further. . . . Because it is impossible to review an exercise of discretion that did not occur, we are confined to reviewing only those issues which were brought to the habeas court's attention in the petition for certification to appeal." (Citation omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 216, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

"It is well established that a petitioner cannot demonstrate that the habeas court abused its discretion in

denying a petition for certification to appeal if the issue raised on appeal was never raised before the court at the time that it considered the petition for certification to appeal as a ground on which certification should be granted. See, e.g., *Henderson* v. *Commissioner of Correction*, 181 Conn. App. 778, 792, 189 A.3d 135, cert. denied, 329 Conn. 911, 186 A.3d 707 (2018); *Tutson* v. *Commissioner of Correction*, [supra, 144 Conn. App. 216–17]; *Perry* v. *Commissioner of Correction*, 131 Conn. App. 792, 796–97, 28 A.3d 1015, cert. denied, 303 Conn. 913, 32 A.3d 966 (2011); *Mercado* v. *Commissioner of Correction*, 85 Conn. App. 869, 872, 860 A.2d 270 (2004), cert. denied, 273 Conn. 908, 870 A.2d 1079 (2005)." *Villafane* v. *Commissioner of Correction*, supra, 190 Conn. App. 573–74.

The petitioner did not set forth any grounds on which he proposed to appeal in his petition for certification to appeal; instead, he elected to incorporate by reference the grounds set forth in his application for a waiver of fees, costs, and expenses and appointment of counsel on appeal (application), filed on the same day as his petition for certification to appeal. In the application, the petitioner proposed to appeal on the following two grounds: (1) "[The] [t]rial judge incorrectly cited *Holliday* v. *Commissioner of Correction*, [supra, 184 Conn. App. 228] . . . which is still pending before the Connecticut Supreme Court"; and (2) "[c]laims involving an offense date that is prior to the enactment of the [risk reduction credit] statute, with emphasis on the equal protection challenges to the retroactive application of P.A. 13-3, are still pending in *Holliday* v. [*Commissioner*] *of Correction*, [supra, 228], which is before the Supreme Court." We construe those grounds as implicating the court's conclusion that it lacked subject matter jurisdiction to entertain the claims set forth in the petition. Neither of those grounds, however, indicates that the petitioner sought to challenge the court's judgment on the basis that the court did not conduct a hearing.[9] Therefore, the petitioner cannot demonstrate that the habeas court abused its discretion in denying the petition for certification to appeal on this ground.

The petitioner maintains that his claim is preserved, but, in the alternative, he seeks review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[10] We conclude that *Golding* review is unavailable to the petitioner in this appeal. Section 52-470 (g) conscribes our appellate review to the issues presented in the petition for certification to appeal, which incorporated the grounds set forth in the application. Permitting a habeas petitioner, in an appeal from a habeas judgment following the denial of a petition for certification to appeal, to seek *Golding* review of a claim that was not raised in, or incorporated into, the petition for certification to appeal would circumvent the requirements of § 52-470 (g) and

undermine the goals that the legislature sought to achieve in enacting § 52-470 (g).[11] See *Villafane* v. *Commissioner of Correction*, supra, 190 Conn. App. 572. Accordingly, the petitioner's claim is not subject to *Golding* review.[12]

### III

The petitioner's next substantive claim on appeal is that the habeas court improperly concluded that it lacked subject matter jurisdiction over the claims in the petition. Specifically, he asserts that the court had subject matter jurisdiction to entertain his claims that the retroactive application of P.A. 13-3 to him violated (1) the ex post facto clause of the United States constitution and (2) his federal constitutional right to due process.[13] We disagree.[14]

"[I]n order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 368.

### A

We first turn to the petitioner's assertion that the habeas court improperly concluded that it lacked subject matter jurisdiction over the ex post facto claim raised in the petition. We are not persuaded.

"[F]or a law to violate the prohibition [against ex post facto laws], it must feature some change from the terms of a law in existence at the time of the criminal act. That feature is entirely sensible, as a core purpose in prohibiting ex post facto laws is to ensure fair notice to a person of the consequences of criminal behavior. . . . [L]aws that impose a greater punishment after the commission of a crime than annexed to the crime at the time of its commission run afoul of the ex post facto prohibition because such laws implicate the central concerns of the ex post facto clause: the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. . . . Thus, to determine whether a habeas court has subject matter jurisdiction over a petitioner's ex post facto claim, [t]he controlling inquiry . . . [is] whether retroactive application of the change in [the] law create[s] a sufficient risk of increasing the measure of punishment attached to the covered crimes. . . . [A] habeas petitioner need only make a colorable showing that the new law creates a genuine risk that he or she will be incarcerated longer under that new law than under the old law." (Citation omitted; internal quotation marks omitted.) *Byrd* v. *Commissioner of Correction*, 177 Conn. App. 71, 80, 171 A.3d 1103 (2017).

In the petition, the petitioner alleged in relevant part that, following the enactment of § 18-98e and the 2011 amendment to § 54-125a (b) (2), he earned risk reduction credit that the respondent applied to advance his parole eligibility date, but, following the enactment of P.A. 13-3, the respondent stopped applying the credit earned by him to advance his parole eligibility date. Critically, however, the petitioner made "no claim that legislation regarding eligibility for parole consideration became more onerous after the date of his criminal behavior. Rather, he claim[ed] that new legislation enacted in 2011 . . . after his criminal conduct . . . conferred a benefit on him that was then taken away in 2013. Such a claim, however, does not implicate the ex post facto prohibition because the changes that occurred between 2011 and 2013 have no bearing on the punishment to which the petitioner's criminal conduct exposed him when he committed [the offense for which he is incarcerated]." *Petaway* v. *Commissioner of Correction*, 160 Conn. App. 727, 732, 125 A.3d 1053 (2015), cert. dismissed, 324 Conn. 912, 153 A.3d 1288 (2017). Indeed, with regard to his parole eligibility, P.A. 13-3 returned the petitioner to the same position that he was in at the time that he committed the robbery in 2008.

In light of the foregoing, we conclude that the petitioner failed to raise a cognizable ex post facto claim in the petition, and, therefore, the habeas court correctly concluded that it lacked subject matter jurisdiction over the ex post facto claim. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 378–80 (habeas court lacked subject matter jurisdiction over ex post facto claim predicated on retroactive application of P.A. 13-3 to petitioner when petitioner committed offense for which he was incarcerated before enactment of 2011 amendment to § 54-125a (b) (2)); see, e.g., *James E.* v. *Commissioner of Correction*, 326 Conn. 388, 394–95, 163 A.3d 593 (2017) (same); *Holliday* v. *Commissioner of Correction*, supra, 184 Conn. App. 233–35 (same); *Byrd* v. *Commissioner of Correction*, supra, 177 Conn. App. 81 (same); *Petaway* v. *Commissioner of Correction*, supra, 160 Conn. App. 732–34 (same); see also *Boria* v. *Commissioner of Correction*, supra, 186 Conn. App. 341–45 (habeas court properly dismissed, for lack of subject matter jurisdiction, claim that P.A. 13-3 and amendment to § 18-98e enacted in 2015 violated ex post facto clause when petitioner was in same position following amendments as he was in at time of commission of offense for which he was incarcerated); cf. *Breton* v. *Commissioner of Correction*, 330 Conn. 462, 484–86, 196 A.3d 789 (2018) (retroactive application of P.A. 13-3 to petitioner who committed offenses between enactment of 2011 amendment to § 54-125a (b) (2) and enactment of P.A. 13-3 constituted violation of ex post facto clause, and, therefore, habeas court improperly dismissed petition for writ of habeas corpus).[15] Accordingly, we also conclude that the court did not abuse its

discretion in denying the petition for certification to appeal as to this claim.

B

We next address the petitioner's assertion that the habeas court improperly concluded that it lacked subject matter jurisdiction to entertain the due process claim raised in the petition. Specifically, the petitioner contends that he had a vested liberty interest in the risk reduction credit that he had earned and that had been applied to advance his parole eligibility date, such that the retroactive application of P.A. 13-3 to him violated his right to due process. This claim is unavailing in light of our Supreme Court's decision in *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 357.

In *Perez*, similar to the petitioner in the present action, a habeas petitioner filed a petition for a writ of habeas corpus alleging that he "had been awarded risk reduction credit by the respondent and that prior to July 1, 2013,[16] the respondent had applied that credit to advance [his] parole eligibility date," such that the retroactive application of P.A. 13-3 to him, inter alia, violated his right to due process. (Footnote added.) Id., 365–66. The habeas court dismissed the petition, concluding that it lacked subject matter jurisdiction over the petition and that the petition failed to state a claim on which relief could be granted, and the petitioner appealed. Id., 366.

On appeal, our Supreme Court concluded that the habeas court lacked subject matter jurisdiction over the petitioner's due process claim.[17] Id., 374. The court began by stating that "[a]n essential predicate" to the due process claim "is a cognizable liberty interest. When a petitioner seeks habeas relief on the basis of a purported liberty interest in parole eligibility, he [or she] is invoking a liberty interest protected by the [d]ue [p]rocess [c]lause of the [f]ourteenth amendment which may not be terminated absent appropriate due process safeguards. . . . In order . . . to qualify as a constitutionally protected liberty, [however] the interest must be one that is *assured* either by statute, judicial decree, or regulation. . . . Evaluating whether a right has vested is important for claims under the . . . [d]ue [p]rocess [c]lause, which solely protect[s] pre-existing entitlements." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 370.

The court then stated: " 'The [United States] Supreme Court has recognized that, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . A state may . . . establish a parole system, but it has no duty to do so." . . . *Greenholtz* v. *Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). Accordingly, whether and to what extent a state creates a liberty

interest in parole by state statute is entirely at the discretion of the state.' " *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 370–71. In addition, the court noted that it "previously has held that parole eligibility under § 54-125a does not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction." (Internal quotation marks omitted.) Id., 371.

Turning to the petitioner's claim regarding the risk reduction credit previously granted to him, the court, citing § 18-98e (a) and (b) (2), determined that the petitioner "overlook[ed] the fact that such credit is not vested in him because it could be rescinded by the respondent at any time in the respondent's discretion for good cause during the petitioner's period of incarceration. . . . Although the legislature has provided guidance to the respondent as to how to exercise his discretion, the respondent still has broad discretion to award or revoke risk reduction credit. As such, the statute does not support an expectation that an inmate will automatically earn risk reduction credit or will necessarily retain such credit once it has been awarded." Id., 372. Then, observing that the petitioner was relying "on the monthly calculation of his parole eligibility date that he purportedly receives from the respondent, which included his earned risk reduction credit prior to July 1, 2013, as evidence that he has a vested interest in continuing to have that earned risk reduction credit reflected in his parole eligibility date," the court determined that "[t]he petitioner misapprehend[ed] the significance of the respondent's monthly parole eligibility date calculation. Under the scheme even prior to 2013, because the respondent could have rescinded any or all of that earned credit in his discretion, the monthly parole eligibility date is nothing more than an estimate of the inmate's parole eligibility date. As such, the monthly parole eligibility date calculation is simply an informational tool to allow the respondent and an inmate to know at any given time how close to parole eligibility the inmate would be if nothing changed. Accordingly, the petitioner lacked a vested right in the application of the risk reduction credit previously granted to advance his parole eligibility date." Id., 373.

Pursuant to *Perez*, the petitioner in the present action lacked a vested liberty interest in the risk reduction credit that he had earned that, following the enactment of P.A. 13-3, was no longer being applied to advance his parole eligibility date. Therefore, we conclude that the habeas court did not have subject matter jurisdiction over his due process claim.[18] See also *Holliday* v. *Commissioner of Correction*, supra, 184 Conn. App. 232, 235 (citing *Perez* to conclude that petitioner did not demonstrate liberty interest in risk reduction credit earned toward parole eligibility, and, therefore, habeas court lacked subject matter jurisdiction over petitioner's due process and equal protection claims challeng-

ing retroactive application of P.A. 13-3 to him). Accordingly, we also conclude that the court did not abuse its discretion in denying the petition for certification to appeal as to this claim.

The appeal is dismissed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Practice Book § 23-24 provides: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:

"(1) the court lacks jurisdiction;

"(2) the petition is wholly frivolous on its face; or

"(3) the relief sought is not available.

"(b) The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[3] "[D]efinite sentence is the flat maximum to which a defendant is sentenced . . . ." *State* v. *Adam H.*, 54 Conn. App. 387, 393, 735 A.2d 839, cert. denied, 251 Conn. 905, 738 A.2d 1091 (1999).

[4] In box "6e" of the petition, which requested that the petitioner "[s]tate all facts and details regarding [his] claim," the petitioner wrote: "[S]ee attached."

"The purpose of the [petition for a writ of habeas corpus] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . The petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Citations omitted; internal quotation marks omitted.) *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 668, 931 A.2d 348, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007). "A complaint includes all exhibits attached to it. See Practice Book § 10-29; *Streicher* v. *Resch*, 20 Conn. App. 714, 716, 570 A.2d 230 (1990)." *Lorthe* v. *Commissioner of Correction*, supra, 668–69.

[5] Article one, § 10, of the United States constitution provides in relevant part: "No State shall . . . pass any . . . ex post facto Law . . . ."

[6] As our Supreme Court recently explained in *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 557 n.7, 223 A.3d 368 (2020), a petition for a writ of habeas corpus submitted to a habeas court for preliminary review under Practice Book § 23-24 (a) "is more accurately described as an application for issuance of the writ" and "that the 'writ' sought by the application, although called a 'writ of habeas corpus,' functions essentially as a writ of summons in that it commands the marshal to summon the respondent, who has custody of the petitioner, to appear and show cause why the petition should not be granted." Like our Supreme Court in *Gilchrist*, unless otherwise indicated, our use of the term "writ" in this opinion "refer[s] to the writ issued by the court to initiate the habeas proceeding rather than the ultimate relief sought by the great writ, i.e., the release of the prisoner from custody." Id.

[7] The petitioner applied for, and was granted, a waiver of fees, costs, and expenses and appointment of counsel on appeal.

[8] "Pursuant to No. 12-115, § 1, of the 2012 Public Acts, subsection (b) of § 52-470 was redesignated as subsection (g)." *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 572 n.1, 211 A.3d 72, cert. denied, 333 Conn. 902, 215 A.3d 160 (2019).

[9] We note that in *Holliday*, in addition to concluding that the habeas court properly dismissed a petition for a writ of habeas corpus for lack of subject matter jurisdiction pursuant to Practice Book § 23-29 (1); *Holliday* v. *Commissioner of Correction*, supra, 184 Conn. App. 233–35; this court concluded that the court was not obligated to conduct a hearing before dismissing the petition at issue. Id., 235–38. We do not construe the petitioner's citation to *Holliday* in the application as suggesting that he sought to appeal on the

ground that the court failed to hold a hearing before declining to issue the writ of habeas corpus. In its memorandum of decision, the court cited *Holliday* for the proposition that it did not have subject matter jurisdiction over the claims in the petition. The court did not consider whether it was obligated to conduct a hearing. Moreover, the issue in *Holliday* was whether a habeas petitioner was entitled to a hearing before a petition for a writ of habeas corpus could be dismissed pursuant to Practice Book § 23-29 (1), which is distinct from the petitioner's claim in this appeal that the habeas court was obligated to conduct a hearing before declining to issue the writ of habeas corpus pursuant to Practice Book § 23-24 (a) (1).

We are mindful that the petitioner was self-represented when he filed the petition for certification to appeal and the application. "[I]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . The modern trend . . . is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . The courts adhere to this rule to ensure that [self-represented] litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience. . . . This rule of construction has limits, however. Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law. . . . A habeas court does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, supra, 181 Conn. App. 793. We conclude that the only reasonable explanation for the petitioner's citation to *Holliday* in the application is that he was addressing the court's reliance on *Holliday* to conclude that it lacked subject matter jurisdiction.

[10] "[The *Golding* doctrine] permits a [petitioner] to prevail on [an unpreserved] claim of constitutional error . . . only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [petitioner] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [T]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the [petitioner] may prevail." (Internal quotation marks omitted.) *Cator* v. *Commissioner of Correction*, 181 Conn. App. 167, 177–78, 185 A.3d 601, cert. denied, 329 Conn. 902, 184 A.3d 1214 (2018).

[11] We acknowledge that our Supreme Court has stated that *Golding* review is available to petitioners in habeas appeals "[i]nasmuch as [a] petitioner challenges the actions of the habeas court itself . . . ." *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 67 n.2, 967 A.2d 41 (2009); see also *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 786–87, 114 A.3d 925 (2015) (citing *Mozell* to explain that, "[i]n 2009, [our Supreme Court] clarified that *Golding* review is not categorically unavailable in habeas appeals. In *Mozell* . . . [our Supreme Court] stated that *Golding* review is available on appeal '[i]nasmuch as [a] petitioner challenges the actions of the habeas court itself . . . .' "). Notably, in *Mozell* and *Moye*, the habeas courts granted the habeas petitioners' petitions for certification to appeal the judgments rendered in those cases. See *Mozell* v. *Commissioner of Correction*, supra, 67; *Moye* v. *Commissioner of Correction*, 147 Conn. App. 325, 328, 81 A.3d 1222 (2013), aff'd, 316 Conn. 779, 114 A.3d 925 (2015). In a habeas appeal following the granting of a petition for certification to appeal, in the absence of prejudice to the opposing party, appellate review is not limited to the issues presented in, or incorporated into, the petition for certification to appeal. See *Logan* v. *Commissioner of Correction*, 125 Conn. App. 744, 752 n.7, 9 A.3d 776 (2010), cert. denied, 300 Conn. 918, 14 A.3d 333 (2011). Thus, *Mozell* and *Moye* do not address the specific issue raised here—that is, whether *Golding* review is available on appeal to a habeas petitioner, following the denial of a petition for certification to appeal, when the claim at issue was not raised in, or incorporated into, the petition for certification to appeal.

[12] Even if the petitioner's claim were properly before us, it would be unavailing. See *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 81–84, 194 A.3d 857 (concluding that petitioner was not entitled to hearing

before habeas court declined to issue writ of habeas corpus under Practice Book § 23-24 (a) (1)), cert. denied, 330 Conn. 933, 195 A.3d 383 (2018); see also *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 563, 223 A.3d 368 (2020) (concluding that habeas court should have declined to issue writ of habeas corpus under Practice Book § 23-24 (a) (1) rather than dismissing case under Practice Book § 23-29 (1) and stating, at conclusion of opinion, "[b]ecause it is undisputed that the petitioner is not entitled to the appointment of counsel or *notice and an opportunity to be heard in connection with the* [*habeas*] *court's decision to decline to issue the writ*, this concludes [our Supreme Court's] review" (emphasis added)).

[13] The petitioner also asserts violations of his rights under our state constitution. The petitioner has failed to provide an independent analysis under our state constitution, and, therefore, we deem his state constitutional claims abandoned. See *Andrews* v. *Commissioner of Correction*, 194 Conn. App. 178, 179 n.1, 220 A.3d 229, cert. denied, 334 Conn. 907, 220 A.3d 36 (2019).

[14] In his appellate brief, the petitioner also makes a bare assertion that the retroactive application of P.A. 13-3 to him violated the "equal protection clauses of the [United States] and Connecticut [c]onstitutions." The petitioner has failed to provide any meaningful analysis of that claim, and, therefore, we decline to review it. See *Villafane* v. *Commissioner of Correction*, supra, 190 Conn. App. 578–79 ("Ordinarily, [c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . . As a general matter, the dispositive question in determining whether a claim is adequately briefed is whether the claim is reasonably discernible [from] the record . . . . We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.)).

[15] As our Supreme Court observed in *Breton*, "only a relatively small percentage of inmates—namely, those inmates who . . . are incarcerated for committing a violent crime between 2011 and 2013—will be affected by [its] holding [in *Breton*]." *Breton* v. *Commissioner of Correction*, supra, 330 Conn. 485.

[16] P.A. 13-3 became effective on July 1, 2013.

[17] Our Supreme Court also concluded that the habeas court lacked subject matter jurisdiction over the petitioner's related claim asserting a violation of his right to personal liberty pursuant to article first, § 9, of the Connecticut constitution. See *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 374.

[18] In his appellate brief, the petitioner repeatedly asserts that the risk reduction credit that he had earned was "forfeited" by the respondent following the enactment of P.A. 13-3. In the petition, however, the petitioner did not allege *forfeiture* of the credit that he had earned; instead, we construe, as did the habeas court, his allegations to be that the respondent stopped applying the credit that the petitioner had earned to advance his parole eligibility date. Thus, like our Supreme Court in *Perez*, "we need not decide whether a deprivation of [the petitioner's] actual earned risk reduction credit would violate due process. See *Abed* v. *Armstrong*, 209 F.3d 63, 66–67 (2d Cir. 2000) (inmates have liberty interest in good time credit they have already earned, but no liberty interest in opportunity to earn credit under discretionary scheme)." *Perez* v. *Commissioner of Correction*, supra, 326 Conn. 369 n.5.