******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

JOSEPH STEPHENSON *v.* COMMISSIONER
OF CORRECTION
(AC 43166)

Bright, C. J., and Moll and Suarez, Js.

*Syllabus*

The petitioner, who had been convicted of burglary in the third degree,
attempt to commit tampering with physical evidence and attempt to
commit arson in the second degree, sought a writ of habeas corpus,
claiming that the Commissioner of Correction and the Board of Pardons
and Paroles violated and misapplied the parole eligibility statute (§ 54-
125a) to increase his punishment, delay his parole eligibility date, and
classify him as a violent offender. The habeas court issued an order
declining to issue the writ of habeas corpus because, pursuant to the
rule of practice (§ 23-24 (a)), the court lacked subject matter jurisdiction
and the petition did not present a claim on which the habeas court could
grant relief. Thereafter, the petitioner filed a petition for certification
to appeal, which the habeas court denied, and the petitioner appealed
to this court. *Held* that the habeas court did not abuse its discretion in
denying the petition for certification to appeal: the allegations in the
petition were insufficient to allege a claim under the stigma plus test
because inmates do not have a cognizable liberty interest in parole
eligibility; moreover, assuming that a habeas petitioner could state, as
a matter of law, a viable stigma plus claim on the basis of his classification
as a violent offender, the petitioner failed to allege facts demonstrating
that his classification as a violent offender caused him to suffer conse-
quences that were qualitatively different from the punishments that are
usually suffered by prisoners so that they constituted a major change
in conditions of his confinement amounting to a grievous loss; accord-
ingly, the petitioner failed to sufficiently allege a cognizable liberty
interest invoking the subject matter jurisdiction of the habeas court.

Argued November 16, 2020—officially released March 16, 2021

*Procedural History*

Petition for a writ of habeas corpus, brought to the
Superior Court in the judicial district of Tolland, where
the court, *Newson, J.*, rendered judgment declining to
issue a writ of habeas corpus; thereafter, the court
denied the petition for certification to appeal, and the
petitioner appealed to this court. *Appeal dismissed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with
whom, on the brief were *William Tong*, attorney gen-
eral, and *Clare Kindall*, solicitor general, for the appel-
lee (respondent).

*Opinion*

MOLL, J. The petitioner, Joseph Stephenson, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court declining to issue a writ of habeas corpus pursuant to Practice Book § 23-24 (a) (1) and (3).[1] On appeal, the petitioner claims that the court improperly (1) denied his petition for certification to appeal and (2) declined to issue the writ of habeas corpus when, in his petition for a writ of habeas corpus, he sufficiently alleged a claim under the stigma plus test adopted by our Supreme Court in *Anthony A.* v. *Commissioner of Correction*, 326 Conn. 668, 680–81, 166 A.3d 614 (2017), and, therefore, he alleged a cognizable liberty interest sufficient to invoke the subject matter jurisdiction of the court. We conclude that the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal, and, therefore, we dismiss the appeal.

Our Supreme Court set forth the following facts in the petitioner's direct appeal from his conviction. "A silent alarm at the [Superior Court for the judicial district of Stamford-Norwalk, geographical area number twenty, located in Norwalk] was triggered at around 11 p.m. on Sunday, March 3, 2013, when the [petitioner] entered the state's attorney's office by breaking a window on the building's eastern side. Although the police were able to respond in about ninety seconds, the [petitioner] successfully evaded capture by running out of a door on the building's southern side. Footage from surveillance cameras introduced by the state at [the petitioner's criminal] trial show that the [petitioner] was inside of the building for slightly more than three minutes. In the investigation that followed, the police determined that the broken window belonged to an office shared by two assistant state's attorneys. One of those attorneys was scheduled to commence jury selection for a criminal trial against the [petitioner] on certain felony charges only two days after the break-in occurred. No other cases were scheduled to begin jury selection that week. Immediately after the break-in, various case files were discovered in an apparent state of disarray at the northern end of a central, common area located outside of that room. Specifically, several files were found sitting askew on top of a desk with two open drawers; still other files were scattered on the floor below in an area adjacent to a horizontal filing cabinet containing similar files. Photographs admitted as full exhibits clearly show labels on these files reading 'TUL' and 'SUM.' Finally, in a short hallway at the opposite end of that same common area, the police found a black bag containing six bottles of industrial strength kerosene with their UPC labels cut off. The bag and its contents were swabbed, and a report subsequently generated by the Connecticut Forensic Science Laboratory included the [petitioner's] genetic

profile as a contributor to a mixture of DNA discovered as a result.

"Various other components of the state's case against the [petitioner] warrant only a brief summary. The day after the break-in, the [petitioner] called the public defender's office at the Norwalk courthouse to ask whether the courthouse was open and whether he was required to come in that day. The state also submitted evidence showing that the [petitioner] drove a 2002 Land Rover Freelander with an aftermarket push bumper, a roof rack, and a broken tail light, and that surveillance videos from the area showed a similar vehicle driving by the courthouse repeatedly in the hours leading up to the break-in. Finally, the state submitted recordings of various telephone calls the [petitioner] made after he had been taken into custody as a result of his conviction on the criminal charges previously pending against him in Norwalk. During one such telephone call, the [petitioner] asked his brother, Christopher Stephenson, to get rid of 'bottles of things' for a heater, speculated about how the police located the vehicle, and attempted to arrange an alibi." (Footnote omitted.) *State* v. *Stephenson*, Conn. , , A.3d (2020).

In connection with the events of March, 2013, the petitioner was arrested on March 21, 2014. On October 28, 2016, following a jury trial, the petitioner was convicted of burglary in the third degree in violation of General Statutes § 53a-103, attempt to commit tampering with physical evidence in violation of General Statutes § 53a-49 (a) (2) and General Statutes (Rev. to 2013) § 53a-155 (a) (1), and attempt to commit arson in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-112 (a) (1) (B). On January 6, 2017, the petitioner was sentenced to a total effective sentence of twelve years of incarceration followed by eight years of special parole. The petitioner filed a direct appeal from the judgment of conviction, which remains pending on remand in this court from our Supreme Court.[2]

On March 15, 2019, the petitioner, representing himself, filed a petition for a writ of habeas corpus using a state supplied form. The petitioner alleged that the Commissioner of Correction (commissioner) and the Board of Pardons and Paroles (board) "ha[d] been misapplying and illegally [overbroadening] the scope, plain meaning and language of [General Statutes] § 54-125a (b) (2) (B)[3] to increase [his] punishment, [delay his] parole eligibility date, violate [the] prohibition against ex post facto law, [and] classify [him] as [a] violent offender beyond what [the] law allows." (Footnote added.) As relief, the petitioner requested that the court order the commissioner and the board "to stop violating the plain meaning of § 54-125a (b) (2) (B), remove the violent offender classification, properly classify [him] to 50 [percent] designation for parole eligibility date,

other relief etc."

Appended to the petition was a document entitled "Petition for Writ of Habeas Corpus" in which the petitioner alleged additional facts.[4] The appended document contained the following relevant allegations. After the petitioner had been sentenced and committed to the custody of the commissioner, the board informed him that, pursuant to § 54-125a, his conviction for attempted arson in the second degree rendered him ineligible for parole until he had served 85 percent of his definite sentence.[5] The board's decision was predicated on a "schedule" generated by the board listing " '85 [percent]' " designated offenses, including arson in the second degree, and a "brochure" providing that any individual convicted of, inter alia, attempt to commit any of the " '85 [percent]' " designated offenses would be ineligible for parole prior to completing 85 percent of his or her definite sentence. According to the petitioner, none of the crimes of which he was convicted was listed or specified in § 54-125a, or involved "the use, attempted use or [threatened] use of physical force against another person" as set forth in § 54-125a (b) (2) (B), and, as a result, "[the commissioner and the board] ha[d] abused their discretion, misapplied, overbroadened the scope and plain meaning and language of [§ 54-125a], to illegally violate [the] petitioner's due process and liberty interest rights under [a]rticle [f]irst, [§§ 1, 8, and 20] of the constitution of the state of Connecticut as well as the United [States] constitution. By classifying [the] petitioner as a 'violent' offender subject to 85 [percent] designation for parole eligibility, whereas the plain meaning and language of the law does not so allow or [prescribe], [the commissioner and the board] ha[d] prejudiced [the] petitioner's liberty interest [and] constitutional rights and caused [the] petitioner to suffer adverse collateral consequences. Such harm include[d] an increase in punishment with a longer period of incarceration than allowed under the plain meaning of the parole eligibility statute and per the intent of the legislature in enacting said statute. Also, [the] petitioner ha[d] been classified to a higher risk level for [the] application of penological goals. [The] petitioner also . . . had to endure the stigma of being publicly [labeled] as a 'violent offender' for past, present and future disparate treatment." (Emphasis omitted.)

As relief, the petitioner requested, inter alia, orders requiring the commissioner and the board (1) to recalculate his parole eligibility date such that he would be eligible for parole when serving 50 percent, or less, of his definite sentence, (2) to "cease and desist" from continuing to classify him as a violent offender when such a classification was improper pursuant to § 54-125a, and (3) to "cease and desist" from violating, expanding the scope of, and misapplying § 54-125a.[6]

On March 26, 2019, the habeas court, *Newson*, *J.*, issued an order declining to issue the writ of habeas corpus because the court lacked subject matter jurisdiction pursuant to Practice Book § 23-24 (a) (1) and because the petition did not "present a claim upon which the habeas court [could] grant relief pursuant to . . . § 23-24 (a) (3)." On April 23, 2019, the petitioner filed a motion for reconsideration, which the court summarily denied on April 24, 2019. Thereafter, the petitioner filed a petition for certification to appeal from the court's judgment, which the court denied.[7] This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first turn to the petitioner's claim that the habeas court abused its discretion in denying his petition for certification to appeal from the court's judgment declining to issue the writ of habeas corpus. We disagree.

General Statutes § 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

"As our Supreme Court has explained, one of the goals our legislature intended by enacting this statute was to limit the number of appeals filed in criminal cases and hasten the final conclusion of the criminal justice process . . . . [T]he legislature intended to discourage frivolous habeas appeals. . . . [Section] 52-470 (b)[8] acts as a limitation on the scope of review, and not the jurisdiction, of the appellate tribunal. . . .

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [disposition] of his [or her] petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he [or she] must demonstrate that the denial of his [or her] petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he [or she] must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of

reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; footnote in original; internal quotation marks omitted.) *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 572–73, 211 A.3d 72, cert. denied, 333 Conn. 902, 215 A.3d 160 (2019).

For the reasons set forth in part II of this opinion, we conclude that the petitioner has failed to demonstrate that (1) his claims are debatable among jurists of reason, (2) a court could resolve the issues in a different manner, or (3) the questions are adequate to deserve encouragement to proceed further. Thus, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

## II

Turning to the merits of the petitioner's substantive claim, the petitioner asserts that the habeas court improperly declined to issue the writ of habeas corpus. Specifically, the petitioner contends that the allegations in the petition sufficiently alleged a claim under the stigma plus test and, therefore, sufficiently alleged a cognizable liberty interest invoking the subject matter jurisdiction of the court. This claim is unavailing.

The following legal principles and standard of review govern our review of the petitioner's claim. Initially, as to the procedural posture of the present case, we note that the court declined to issue the writ of habeas corpus pursuant to Practice Book § 23-24. As our Supreme Court explained in *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 223 A.3d 368 (2020), "[§] 23-24 . . . reverses the usual sequence followed in the ordinary civil case; the habeas petition first is filed with the [habeas] court, and the writ issues and service of process occurs only if the court determines, after a preliminary review of the petition, that the petition pleads a nonfrivolous claim within the court's jurisdiction upon which relief can be granted." Id., 557. "[T]he screening function of . . . § 23-24 plays an important role in habeas corpus proceedings, but it is intended only to weed out obviously and unequivocally defective petitions, and we emphasize that [b]oth statute and case law evince a strong presumption that a petitioner for

a writ of habeas corpus is entitled to present evidence in support of his [or her] claims. . . . Screening petitions prior to the issuance of the writ is intended to conserve judicial resources by eliminating obviously defective petitions; it is not meant to close the doors of the habeas court to justiciable claims. Special considerations ordinarily obtain when a petitioner has proceeded pro se. . . . [I]n such a case, courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed. . . . The justification for this policy is apparent. If the writ of habeas corpus is to continue to have meaningful purpose, it must be accessible not only to those with a strong legal background or the financial means to retain counsel, but also to the mass of uneducated, unrepresented prisoners. . . . Thus, when borderline cases are detected in the preliminary review under § 23-24, the habeas court should issue the writ and appoint counsel so that any potential deficiencies can be addressed in the regular course after the proceeding has commenced." (Citations omitted; internal quotation marks omitted.) Id., 560–61.

"[I]n order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Whistnant* v. *Commissioner of Correction*, 199 Conn. App. 406, 420, 236 A.3d 276, cert. denied, 335 Conn. 969, 240 A.3d 286 (2020).

Resolving the petitioner's claim requires us to review the allegations contained in his petition for a writ of habeas corpus, which he filed as a self-represented party. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . However, [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he [or she] has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his [or her] complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings . . . to decide claims not raised." (Citation omitted; internal quotation marks omitted.) *Vitale* v. *Commissioner of Correction*, 178 Conn. App. 844, 850–51, 178 A.3d 418 (2017), cert. denied, 328 Conn. 923, 181 A.3d 566 (2018). "In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings in such a way so as to

strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Whistnant* v. *Commissioner of Correction*, supra, 199 Conn. App. 418 n.9. "[W]e take the facts to be those alleged in the petition, including those facts necessarily implied from the allegations, construing them in favor of the petitioner for purposes of deciding whether the court has subject matter jurisdiction." (Internal quotation marks omitted.) *Green* v. *Commissioner of Correction*, 184 Conn. App. 76, 85–86, 194 A.3d 857, cert. denied, 330 Conn. 933, 195 A.3d 383 (2018).

" 'Liberty interests protected by the [f]ourteenth [a]mendment may arise from two sources—the [d]ue [p]rocess [c]lause itself and the laws of the [s]tates.' . . . *State* v. *Matos*, 240 Conn. 743, 749, 694 A.2d 775 (1997). 'A liberty interest may arise from the [c]onstitution itself, by reason of guarantees implicit in the word "liberty," see, e.g., *Vitek* v. *Jones*, 445 U.S. 480, [493–94], 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., *Wolff* v. *McDonnell*, 418 U.S. 539, [556–58], 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits).' *Wilkinson* v. *Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005)." *Wright* v. *Commissioner of Correction*, 201 Conn. App. 339, 346–47, 242 A.3d 756 (2020), cert. denied, 336 Conn. 905, 242 A.3d 1009 (2021).

In *Anthony A.* v. *Commissioner of Correction*, supra, 326 Conn. 668, our Supreme Court adopted the stigma plus test used in federal courts to determine whether the petitioner had alleged a cognizable liberty interest. Id., 680–81. In that case, the petitioner filed a petition for a writ of habeas corpus claiming that the Department of Correction improperly had classified him as a sex offender without providing him with procedural due process. Id., 672. Citing *Sandin* v. *Conner*, 515 U.S. 472, 479 n.4, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), our Supreme Court observed that "in certain situations, a different inquiry is appropriate to determine whether the due process clause directly confers a liberty interest on inmates." (Internal quotation marks omitted.) *Anthony A.* v. *Commissioner of Correction*, supra, 679. "Specifically . . . where a state action has '"stigmatizing consequences"' for a prisoner and results in a punishment that is '"qualitatively different"' from that 'characteristically suffered by a person convicted of crime,' the protected liberty interest arises from the due process clause directly." (Citation omitted.) Id. The court determined that the stigma plus test was applicable in the case before it, where the petitioner had "alleged that he was stigmatized when the [commissioner] wrongfully classified him as a sex offender, and allege[d] as the 'plus' that he suffered various negative

consequences, including being compelled to participate in treatment or risk forfeiting good time credits and parole eligibility . . . ." Id., 680. Thus, the court continued, the inquiry before it "focuse[d] on whether the allegations of the petition demonstrate[d] that the classification was wrongful and stigmatized the petitioner, and that the consequences suffered by the petitioner were 'qualitatively different' from the punishments usually suffered by prisoners, so that they constituted a major change in the conditions of confinement amounting to a grievous loss." Id., 680–81. The court determined that the petitioner had sufficiently alleged a claim under the stigma plus test and, thus, had sufficiently alleged a protected liberty interest to invoke the habeas court's subject matter jurisdiction. Id., 686.

In the present case, the petitioner maintains that, in his petition, he sufficiently alleged a claim under the stigma plus test, and, therefore, he sufficiently alleged a cognizable liberty interest. We disagree and conclude that the habeas court lacked subject matter jurisdiction over the petition for two independent reasons.

First, construing the allegations in favor of the petitioner, we do not read the petition to assert a claim under the stigma plus test; rather, at its crux, the petition constitutes an attempt by the petitioner to advance his parole eligibility such that he would be eligible for parole after serving 50 percent of his definite sentence under § 54-125a (a), rather than 85 percent of his definite sentence under § 54-125a (b). This is made apparent by the petitioner's repeated references throughout the petition to his parole eligibility and by his explicit request for relief that the habeas court order the commissioner and the board to reclassify him for parole eligibility purposes. As our Supreme Court has made clear, however, an inmate does not have a cognizable liberty interest in parole eligibility under § 54-125a (a) and/or (b). See *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 261–62, 914 A.2d 1034 (2007) (concluding that parole eligibility under General Statutes (Rev. to 2001) § 54-125a, as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74,[9] "does not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction"); see also *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 371, 163 A.3d 597 (2017) (The court cited *Baker* for the proposition that there is no cognizable liberty interest in parole eligibility under § 54-125a and, additionally, observed that it is "[a] fundamental fact that the determination whether to grant an inmate parole is entirely at the discretion of the board. It follows that if an inmate has no vested liberty interest in the granting of parole, then the timing of when the board could, in its discretion, grant parole does not rise to the level of a vested liberty interest either." (Emphasis omitted.)).[10] As a result, we conclude that the habeas court lacked subject matter jurisdiction to entertain the petition.

Second, even assuming arguendo that a habeas petitioner could state, as a matter of law, a viable stigma plus claim on the basis of his or her classification as a violent offender and that the petitioner attempted to raise such a claim in his petition,[11] we conclude that the allegations in the petition do not sufficiently allege a stigma plus claim. To plead a stigma plus claim, a petitioner must allege facts demonstrating that a classification "was wrongful and stigmatized the petitioner, and that the consequences suffered by the petitioner were 'qualitatively different' from the punishments usually suffered by prisoners, so that they constituted a major change in the conditions of confinement amounting to a grievous loss." *Anthony A.* v. *Commissioner of Correction*, supra, 326 Conn. 681. In the present case, at a minimum, the petitioner failed to sufficiently allege facts satisfying the "plus" portion of the stigma plus test.[12]

As our Supreme Court explained in *Anthony A.*, "[a] recent decision of the United States Supreme Court highlights the difficulty of determining what constitutes a qualitative difference or major change in the conditions of confinement amounting to a grievous loss. [See *Wilkinson* v. *Austin*, supra, 545 U.S. 223.] One cannot do so without reference to what constitutes 'typical' or 'ordinary' conditions of confinement for a prisoner. . . . What must be determined . . . is the degree of departure from the 'baseline.' . . . The emphasis in *Wilkinson* on the need to first determine the baseline requires that our inquiry be a pragmatic one, aimed at determining the degree to which the conditions alleged by the petitioner depart from the expected norm of prison confinement." (Citations omitted.) *Anthony A.* v. *Commissioner of Correction*, supra, 326 Conn. 682–83. Our Supreme Court further observed that, in considering whether decisions made by prison officials have caused "a major change in the conditions of confinement amounting to a grievous loss, it is relevant to consider the degree of discretion accorded to the officials making those decisions. The greater the discretion, the more difficult it becomes to establish a departure from the norm." Id., 683.

A careful review of the petition reveals that the only consequences alleged by the petitioner that stemmed from his classification as a violent offender were (1) "an increase in punishment with a longer period of incarceration than allowed under the plain meaning of the parole eligibility statute and per the intent of the legislature in enacting said statute" and (2) the petitioner being "classified to a higher risk level for [the] application of penological goals." We do not construe these conclusory allegations as identifying consequences that were " 'qualitatively different' from the punishments usually suffered by prisoners, so that they constituted a major change in the conditions of confine-

ment amounting to a grievous loss." *Anthony A.* v. *Commissioner of Correction*, supra, 326 Conn. 681; see *Vitale* v. *Commissioner of Correction*, supra, 178 Conn. App. 870–71 (petitioner's allegations "imply[ing] that he was subject to a condition of parole imposed and/or monitored by a special sex offender unit" were insufficient to satisfy "plus" portion of stigma plus test); cf. *Anthony A.* v. *Commissioner of Correction*, supra, 686 (petitioner's allegation that he was required to participate in sex offender treatment or risk losing certain benefits satisfied "plus" portion of stigma plus test). Having failed to sufficiently allege a stigma plus claim, the petitioner has not sufficiently alleged a cognizable liberty interest over which the habeas court had subject matter jurisdiction. See, e.g., *Vitale* v. *Commissioner of Correction*, supra, 871 ("[b]ecause the petitioner has satisfied neither factor of the stigma plus test, we conclude that he has failed to allege sufficient facts to assert a cognizable liberty interest that affords jurisdiction to the habeas court over his claim").

We are mindful of our Supreme Court's instruction that Practice Book § 23-24 "is intended only to weed out obviously and unequivocally defective petitions," that there is "a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his [or her] claims," and that, in cases involving self-represented petitioners, "courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed." (Internal quotation marks omitted.) *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 560. We conclude that the petition in the present case falls within the category of those petitions that are "obviously and unequivocally defective." Id. The petitioner failed to sufficiently allege a cognizable liberty interest invoking the subject matter jurisdiction of the habeas court, and, therefore, the court properly declined to issue the writ of habeas corpus under Practice Book § 23-24 (a) (1).[13] Accordingly, we further conclude that the court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Practice Book § 23-24 provides: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:

"(1) the court lacks jurisdiction;

"(2) the petition is wholly frivolous on its face; or

"(3) the relief sought is not available.

"(b) The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

[2] On January 8, 2019, this court reversed the judgment of conviction and remanded the case to the trial court with direction to render a judgment of acquittal as to all three charges against the petitioner. See *State* v. *Stephenson*, 187 Conn. App. 20, 39, 201 A.3d 427 (2019), rev'd,      Conn.      , A.3d      (2020). On December 18, 2020, after having granted the state's petition for certification to appeal, our Supreme Court reversed this court's judgment and remanded the case to this court for further proceedings on

the ground that this court had erred in resolving the direct appeal on an issue of evidentiary sufficiency that the parties had not been afforded an opportunity to brief or argue. See *State* v. *Stephenson*, supra,     Conn.     .

[3] General Statutes § 54-125a (a) provides in relevant part: "A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or total effective sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the total effective sentence less any risk reduction credit earned under the provisions of section 18-98e or one-half of the most recent sentence imposed by the court less any risk reduction credit earned under the provisions of section 18-98e, whichever is greater, may be allowed to go at large on parole (1) in accordance with the provisions of section 54-125i, or (2) in the discretion of a panel of the Board of Pardons and Paroles, if (A) it appears from all available information, including any reports from the Commissioner of Correction that the panel may require, that there is a reasonable probability that such inmate will live and remain at liberty without violating the law, and (B) such release is not incompatible with the welfare of society. . . ."

General Statutes § 54-125a (b) (2) provides in relevant part: "A person convicted of . . . (B) an offense, other than [certain parole ineligible offenses], where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed."

General Statutes § 54-125a (c) provides in relevant part: "The Board of Pardons and Paroles shall, not later than July 1, 1996, adopt regulations . . . to ensure that a person convicted of an offense described in subdivision (2) of subsection (b) of this section is not released on parole until such person has served eighty-five per cent of the definite sentence imposed by the court. Such regulations shall include guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted."

In 2015, amendments were made to § 54-125a (a) that have no bearing on this appeal. See Public Acts 2015, No. 15-84, § 1; Public Acts, Spec. Sess., June, 2015, No. 15-2, §§ 12 and 13. Additionally, at the time of the petitioner's offenses, General Statutes (Rev. to 2013) § 54-125a (b) (2) provided in relevant part: "A person convicted of . . . (B) an offense, other than [certain parole ineligible offenses], where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed *less any risk reduction credit earned under the provisions of section 18-98e.*" (Emphasis added.) This appeal does not involve any claim concerning risk reduction credit. Accordingly, in the interest of simplicity, unless otherwise noted, we refer to the current revision of the statute.

[4] In setting forth the allegations on the state supplied form that he filed, the petitioner referred to the appended document. We construe the appended document to be a part of the petition. See *Whistnant* v. *Commissioner of Correction*, 199 Conn. App. 406, 411 n.4, 236 A.3d 276, cert. denied, 335 Conn. 969, 240 A.3d 286 (2020).

[5] "[D]efinite sentence is the flat maximum to which a defendant is sentenced . . . ." (Internal quotation marks omitted.) *Whistnant* v. *Commissioner of Correction*, 199 Conn. App. 406, 409 n.3, 236 A.3d 276, cert. denied, 335 Conn. 969, 240 A.3d 286 (2020).

[6] In his prayer for relief, the petitioner also requested an order directing the commissioner and the board to apply § 54-125a as it existed at the time of his "alleged [offenses] . . . to avoid any ex post facto law violation." On appeal, the petitioner does not raise any ex post facto claim.

[7] The petitioner applied for, and was granted, a waiver of fees, costs, and expenses and appointment of counsel on appeal.

[8] "Pursuant to No. 12-115, § 1, of the 2012 Public Acts, subsection (b) of § 52-470 was redesignated as subsection (g)." *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 572 n.1, 211 A.3d 72, cert. denied, 333 Conn. 902, 215 A.3d 160 (2019).

[9] General Statutes (Rev. to 2001) § 54-125a, as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74, provides in relevant part: "(a) A person convicted of one or more crimes who is incarcerated on or after

October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the Board of Parole [now the Board of Pardons and Paroles] for the institution in which the person is confined, if (1) it appears from all available information, including any reports from the Commissioner of Correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, and (2) such release is not incompatible with the welfare of society. . . .

"(b) . . . (2) A person convicted of an offense, other than [certain parole ineligible offenses], where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed.

"(c) The Board of Parole [now the Board of Pardons and Paroles] shall, not later than July 1, 1996, adopt regulations . . . to ensure that a person convicted of an offense described in subdivision (2) of subsection (b) of this section is not released on parole until such person has served eighty-five per cent of the definite sentence imposed by the court. Such regulations shall include guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted. . . ."

[10] In *Baker*, as this court recently summarized, "the petitioner had alleged that he improperly had been classified as a violent offender under General Statutes (Rev. to 2001) § 54-125a (b) (2) and (c), as amended by Public Acts, Spec. Sess., June, 2001, No. 01-9, § 74, thus rendering him ineligible for parole until he served 85 percent of his sentence, and that he should have been classified as a nonviolent offender under subsection (a) of that statute, which would have made him eligible for parole after he had served 50 percent of his sentence. *Baker* v. *Commissioner of Correction*, supra, 281 Conn. 245–46. Our Supreme Court held that the petitioner did not have a cognizable liberty interest in his parole eligibility status sufficient to invoke the subject matter jurisdiction of the habeas court. Id., 243, 251–52. In reaching that conclusion, the court was guided by United States Supreme Court precedent. See *Greenholtz* v. *Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 11–12, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) (*Greenholtz*) (holding that mandatory language in state's parole statute created cognizable liberty interest); *Board of Pardons* v. *Allen*, 482 U.S. 369, 378 n.10, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987) (same). In contrast to the statutes at issue in *Greenholtz* and *Allen*, the court in *Baker* observed that (1) the 'only mandatory language in [the amended 2001 revision of § 54-125a] is that in subsection (b) preventing the board from considering violent offenders for parole before they have served 85 percent of their sentences' . . . *Baker* v. *Commissioner of Correction*, supra, 255; (2) 'the broad, discretionary nature of the board's authority in classifying offenders [as violent] is underscored in subsection (c) [of § 54-125a]'; id., 255–56; and (3) 'the decision to grant parole [under § 54-125a] is entirely within the discretion of the board.' Id., 257. In light of the permissive language of § 54-125a, the court concluded that the petitioner did not possess a cognizable liberty interest in parole eligibility. See id., 257." (Emphasis omitted; footnote omitted.) *Boyd* v. *Commissioner of Correction*, 199 Conn. App. 575, 582–83, 238 A.3d 88, cert. granted, 335 Conn. 962, 239 A.3d 1214 (2020).

Later, in *Anthony A.*, our Supreme Court observed that in *Baker*, in "consider[ing] the question of whether the actions of prison officials gave rise to a protected liberty interest, the court [had] resolved the issue by relying on authority that predated and was disapproved by [the United States Supreme Court in *Sandin* v. *Conner*, supra, 515 U.S. 472]." *Anthony A.* v. *Commissioner of Correction*, supra, 326 Conn. 685. The court determined that, because (1) the authority on which the court in *Baker* relied had been criticized by *Sandin* and (2) *Baker* did not appear to involve a petitioner who had claimed to have been stigmatized by the classification at issue, *Baker* did not control the outcome of the case before it regarding the petitioner's classification as a sex offender. Id.

We do not construe *Anthony A.* as having vitiated the conclusion reached in *Baker* and reaffirmed in *Perez* that parole eligibility under § 54-125a (a) and/or (b) is not a cognizable liberty interest. In *Wright* v. *Commissioner of Correction*, supra, 201 Conn. App. 339, this court observed that, notwith-

standing the criticism in *Sandin* of the methodology used in *Greenholtz* and *Allen* as recognized by *Anthony A.*, "[i]t remains good law that an inmate does not have a constitutionally protected liberty interest in early parole consideration." Id., 349–50 n.4. Additionally, in decisions published after *Anthony A.*, this court has continued to rely on *Baker* or *Perez* for the proposition that that there is no cognizable liberty interest in parole eligibility under § 54-125a; see, e.g., *State* v. *Brown*, 192 Conn. App. 147, 156 n.4, 217 A.3d 690 (2019); *Dinham* v. *Commissioner of Correction*, 191 Conn. App. 84, 99, 213 A.3d 507, cert. denied, 333 Conn. 927, 217 A.3d 995 (2019); *Vitale* v. *Commissioner of Correction*, supra, 178 Conn. App. 868; *Byrd* v. *Commissioner of Correction*, 177 Conn. App. 71, 80 n.7, 171 A.3d 1103 (2017); with the exception of parole eligibility under § 54-125a (f), which was enacted by the legislature in 2015 and concerns juvenile offenders. See *Boyd* v. *Commissioner of Correction*, supra, 199 Conn. App. 577, 590 (concluding that petitioner had cognizable liberty interest in parole eligibility under § 54-125a (f)).

[11] Following *Anthony A.*, this court has considered the stigma plus test in habeas cases that, like *Anthony A.*, involved claims that a petitioner improperly was classified as a sex offender. See *Carolina* v. *Commissioner of Correction*, 192 Conn. App. 296, 301–303, 217 A.3d 1068, cert. denied, 334 Conn. 909, 221 A.3d 43 (2019); *Vitale* v. *Commissioner of Correction*, supra, 178 Conn. App. 868–71.

[12] The stigma plus test is conjunctive and, therefore, we need not consider whether the petitioner sufficiently alleged facts satisfying the remaining portions of the test.

[13] The court declined to issue the writ of habeas corpus for lack of subject matter jurisdiction under Practice Book § 23-24 (a) (1) and for failure to "present a claim upon which the . . . court can grant relief" under § 23-24 (a) (3). Because we conclude that the court properly determined that it lacked subject matter jurisdiction under § 23-24 (a) (1), we need not address the court's separate reliance on § 23-24 (a) (3).